477 So.2d 904 (1985)
Doretha GREEN
v.
The LOUISIANA COCA COLA BOTTLING COMPANY, LTD.
No. CA-3882.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1985.
Writ Denied November 22, 1985.
*905 Anna M. Washburn, New Orleans, for plaintiff/appellee.
Michael R. Zsembik, Reuter, Reuter, Reuter & Pizza, New Orleans, for defendant/appellant.
Before REDMANN, C.J., and CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Louisiana Coca Cola Bottling Co., Ltd. appeals a judgment of the lower court awarding plaintiff, Doretha Green, workmen's compensation benefits.
The issues presented for our review can be summarized as whether or not, based on the record, the trial court committed manifest error in its award. Specifically, defendant argues that the trial court erred in not according the proper weight to the testimony of Dr. Dabezies, the physician appointed pursuant to the provisions of La. R.S. 23:1123. Defendant also argues that the trial court erred in failing to discredit plaintiff's own testimony.
On October 12, 1982, plaintiff, while employed by defendant and during the course and scope of her employment, fell from the top of a three foot ladder while attempting to move a case of coke. She landed on her buttocks, on a concrete floor with the case of coke on top of her. She experienced immediate pain in her buttocks, back and right arm. Suit for compensation benefits was instituted, and the trial court granted judgment decreeing plaintiff to be partially disabled, awarding her 66 2/3% of the difference between the wages she was earning at the time of her injury and any wages she actually earns in any week thereafter for a period of four hundred fifty weeks.
Prior to trial of this matter, the trial judge appointed Dr. Eugene Dabezies to examine plaintiff pursuant to the provisions of La.R.S. 23:1123. That statute provides:
"If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director or, upon the director's refusal, by the court. The fee of the examiner shall be fixed by the director in accordance with prevailing medical fees in the community for such examination and shall be paid in advance by the applicant. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter."[1]
Including Dr. Dabezies there were nine medical opinions given in this case, either by deposition or live testimony. Defendant argues that despite the fact that Dr. Dabezies' opinion was favorable to defendant, the trial court ignored the presumption afforded his testimony, citing Carlock v. Gross, 200 So.2d 353 (La.App. 4th Cir. 1967), writ den. 251 La. 60, 202 So.2d 662.
*906 The Carlock case was a modification proceeding wherein the employer sought termination of compensation benefits. Although the Court in that case made it clear that the legislative intent of the statute was to give significant weight to the findings of a court appointed expert, the court also qualified that interpretation by stating:
"The court appointed medical expert, is a wholly disinterested (emphasis added) party, and it is more likely that his examination will be entirely objective."
* * * * * *
"This prima facie presumption should not require a greater amount of evidence to refute than any other prima facie presumption, but a mere contrary opinion is not alone sufficient to overturn it." Carlock, supra. at pp. 359-360.
We interpret the Carlock decision to mean that if the trial court concludes that the appointed physician is a disinterested party, his conclusions will be entirely objective and accordingly his opinion will be given significant weight. However, the weight accorded that opinion can be refuted by other credible evidence. We add to the Carlock interpretation of La.R.S. 23:1123 our own interpretation that the legislature never intended the opinion of a court appointed physician to be conclusive. That opinion cannot be substituted for the decision making functions of the trial court. The trial judge makes the ultimate determination based on his opinion of the credibility of each witness, whether lay person or expert, as well as the weight to be given to their testimony. The significant weight given to the opinion of the court appointed expert can vary in accordance with the various factors which a trial judge utilizes in evaluating the testimony of any other witness. Thus, the significant weight can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors.
This Court has meticulously reviewed the opinions of each expert and, although they are conflicting, we find no error in the trial court's ultimate decision.
Immediately after plaintiff's accident she was referred by defendant to Dr. Nelson, an expert in general medicine. His conclusions, after examination and X-rays, was that plaintiff suffered a bruised left arm and lower back strain which would impair her for five to ten days. Dissatisfied with Dr. Nelson's treatment, and suffering persistent pain in her lower back and buttocks, plaintiff next saw Dr. Rozas, an orthopaedist.
Dr. Rozas treated plaintiff for a short period and diagnosed a mild lumbrosacral strain. He did not X-ray plaintiff but did prescribe a muscle relaxant. Plaintiff next saw Dr. Craig Turner.
Dr. Turner X-rayed plaintiff, and performed various tests including the straight leg raising test which he concluded was positive, as well as a pelvic examination. Plaintiff saw Dr. Turner from October 29, 1982 thru January 27, 1983. His conclusions were that plaintiff had a distal sacral-coccygeal fracture, and advised she see an orthopaedist.
Plaintiff saw Dr. Phillips, an orthopaedist, on February 24, 1983 with continuing complaints in the lower back and buttocks. His physical examination revealed tenderness over the tip of the coccyx area, and positive straight leg raising test.[2] In addition a CAT Scan and X-rays were taken of the coccyx area and the lower back. Dr. Phillips' interpretation of those tests is that plaintiff has a bulging disc at the L4-L5 spacing, and a healed fracture of the coccyx.
Dr. Butler, an orthopaedic surgeon at Tulane Medical Center, after taking X-rays of the coccyx area diagnosed plaintiff as suffering from coccydynia.
*907 A thermogram performed by Dr. Wakabayshi on November 8, 1984 revealed areas of heat emission over the low back area, at the sacrum level and heat emission at the toes, suggestive of nerve root irritation at L5.
At the suggestion of Dr. Turner, plaintiff visited the Pain Rehabilitation Clinic at Tulane Medical Center where Dr. Thigpen made a diagnosis of coccydynia and began treatments to relieve the pain.
Dr. Applebaum, a neurosurgeon, examined plaintiff at the request of defendant in April of 1983. Although he found a minimal bulging at the L4-L5 spacing, it was his opinion she did not have disease or damage involving the spinal column and nerve root. He felt she could return to her previous occupation from a neurological point of view.
As previously stated, the trial court appointed Dr. Dabezies pursuant to the provision of La.R.S. 23:1123. Dr. Dabezies examined plaintiff on one occasion, February 28, 1984. His examination lasted in "excess of five minutes, but no more than ten". That examination consisted of an interview and physical examination. Palpatation of the lumbar muscles, sacrum and coccyx did not reveal any tenderness. On forward flexion she could touch the mid calf with her fingertips. Although Dr. Dabezies did not have many of the reports and X-rays of the other treating physicians at the time of his examination, he did subsequently acquire them. His interpretation of the X-rays and CAT scan contradicts that of Drs. Phillips and Turner. He did not perform a pelvic examination. He opined that plaintiff had neither a herniated disc nor coccydynia.
A trial court's factual findings with regard to the issue of disability are entitled to great weight and will not be disturbed absent clear error. Culp v. Belden Corp., 432 So.2d 847 (La.1983). After review of the entire record we find no manifest error in the ruling of the lower court. We are convinced that the weight of the medical evidence in this case is sufficient to overcome the degree of substantial weight afforded Dr. Dabezies' conclusions as the court appointed expert.
Defendant also argues that plaintiff's own testimony should be discredited because of her alleged misrepresentations to the Court with respect to a prior municipal offense. On cross-examination defense counsel confronted plaintiff with a copy of a conviction for the municipal offense of theft. Plaintiff's response was she never went to prison for five days, even though the apparent sentence was five days in prison and a twenty-five dollar fine. There is confusion as to whether plaintiff denied the offense or denied serving a prison term. In any event, the credibility and weight to be given any witness, including plaintiff is within the province of the trial judge and will not be disturbed absent serious error. Under the circumstances and facts of this case we find no error in the trial court's credibility call.
Accordingly the lower court judgment is affirmed. All costs to be paid by defendant.
AFFIRMED.
NOTES
[1] Prior to the 1983 amendment, the provisions were:

"If there be any dispute thereafter as to the condition of the employee, the court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the court. The fees of such examiner shall be fixed by the court at not more than ten dollars, and shall be paid in advance by the applicant. The medical examiner shall report his conclusions from the examination to the court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter."
[2] There is much disagreement among the various experts as to whether this test is subjective or objective, and whether it is conclusive. It is our opinion that it is but one "piece of the puzzle" that must be considered in rendering an opinion on the whole puzzle.