606 So.2d 996 (1992)
Craig CONNOR
v.
JONES BROTHERS ENTERPRISES, et al.
No. 92-CA-0967.
Court of Appeal of Louisiana, Fourth Circuit.
October 15, 1992.
Rehearing Denied November 17, 1992.
*998 George A. Guidry, New Orleans, for plaintiff/appellant.
Frederick A. Miller & Associates, James C. Cockfield, Metairie, for defendants/appellees.
Before LOBRANO, JONES and WALTZER, JJ.
JONES, Judge.
This is a worker's compensation case in which the appellant, Craig Conners, suffered a back injury which necessitated surgery. He sought supplemental earnings benefits pursuant to La.R.S. 23:1221(3) from Jones Brothers Enterprises, his employer and Hartford Insurance Company, his employer's worker's compensation insurer.
At the trial of this case the hearing examiner granted the Hartford Insurance Company's motion to dismiss appellant's claims for supplemental benefits. In granting the motion for an involuntary dismissal, the hearing examiner specifically stated that the appellant failed to prove a causal connection between his injury and the accident that occurred on the job. The Hearing Examiner found that the appellant did not produce a physician to testify that the herniated disc, which necessitated the surgery, was caused by the accident. The hearing examiner also relied upon the fact that the admittedly incomplete medical records from Charity Hospital contained no mention of an accident to support the dismissal of appellant's claim for benefits.
Having reviewed the record, we conclude that the appellant presented sufficient evidence to establish a prima facie case that he suffered a work related injury. The hearing examiner committed manifest error in dismissing the appellant's claim prior to requiring the defendants to present evidence negating the fact that the accident caused or aggravated the plaintiff's injury.
For this reason, we reverse the judgment of the hearing examiner and remand the case for a new trial.

FACTS
The appellant was employed by Jones Brothers Enterprise as a driver/mechanic. Two to four months prior to the accident which allegedly resulted in the back injury which is the subject of this case, the appellant experienced pain in his back while performing a brake job for his employer. He did not report this injury but continued to work while medicating himself with over the counter medication. On July 1, 1989, the date of the accident which is the subject of this claim, he was again performing a brake job. While changing a brake drum, he experienced severe pain in his back and reported the incident to Mr. J.D. Jones, the proprietor of Jones Brothers Enterprises. His employer, thereupon, allowed him to rest until the end of the day. Subsequently, his pain worsened. On July 4, 1989, while preparing to attend a picnic, he experienced such severe pain in his back that he attempted to secure medical care at Charity Hospital of New Orleans. X-rays were taken on July 7, 1989 and July 12, 1989. He subsequently underwent surgery for a herniated disc on July 23, 1989. His employer reported the injury to his worker's compensation insurer, Hartford Insurance Company, on or about July 6, 1989 or July 7, 1989. Hartford Insurance Company paid the appellant for 37 weeks of worker's compensation from July 9, 1989 to March 24, 1990 at the weekly compensation rate of $206.66, based on an average weekly rate of $310 per week. The total amount of weekly payments of worker's compensation *999 paid to appellant was $7,647.45. The defendant, Hartford Insurance Company stopped payment of the benefits in March, 1990 citing that there was no medical data available to verify and substantiate the appellant's continuing disability. The appellant then filed a claim for supplemental benefits.
This case was tried before the hearing examiner on May 24, 1991. Appellant testified concerning the accident that occurred on July 1, 1989 and his efforts to obtain medical care for his injury. Appellant testified that when he first sought treatment at Charity Hospital he was not admitted but rather was told to come back the next day. The next day he returned but was told to come back on the 7th. He testified that he was admitted to Charity Hospital on the 7th and stayed in the hospital for three days.
Appellant testified that he was originally scheduled for surgery on the 10th of July but the hospital had some emergency surgeries which delayed his surgery. He underwent surgery at Charity Hospital but did not recall the exact date of the operation. At the time that appellant first became aware of the seriousness of his condition, his employer, Mr. Jones was out of town. However, when Mr. Jones returned, he visited the appellant in the hospital. Appellant did not remember the exact date of the visit but thought it occurred prior to his surgery.
Appellant also testified that since his injury he has been unable to engage in any work. He still suffers back pain and can only sit for about fifteen or twenty minutes. He can only stand for this same period of time. At the time of the hearing, he had not been offered any vocational rehabilitation services or training for any other jobs.
The appellant called Mr. Jones as a witness. Mr. Jones corroborated the plaintiff's testimony concerning the report of an injury at work. Mr. Jones testified that he was in the yard at the time that the appellant and another employee were performing the brake job and that the appellant told him that he had hurt his back. He also testified that he was out of town when the appellant was seeking medical care at Charity Hospital. When he returned to work and was told that the appellant was in the hospital, he went to the hospital to visit the appellant. He testified that he recalled visiting the appellant at the hospital on the night of July 5, 1989. At that time he informed the appellant that he had insurance available to cover the expenses associated with the injury.
After the appellant and his employer testified, the parties stipulated certain medical documents into evidence. The appellant then rested his case, subject to his right to cross examine Dr. Gordon P. Nutik, the independent medical examiner who had been hired by the defendants, and Mr. Douglas Kuylen, the vocational rehabilitation expert who was to testify for the defendants.
After Mr. Kuylen had been sworn in to testify, the defendant moved for an involuntary dismissal of the appellant's case based on the fact that the appellant had failed to prove a causal connection between the accident of July 1, 1989 and the condition requiring surgery on July 23, 1989. In connection with his motion to dismiss, the defendant informed the hearing examiner that the exhibits from Charity Hospital made no mention of any accident. He argued that the history of the injury, as recorded by the doctor who saw the plaintiff on that date did not reflect that the injury was caused by an on the job accident. He further argued that if the appellant was correct, the records lacked two visits since the records from Charity began on July 10, 1989.
The fact that the appellant suffered a disabling back injury is undisputed. The crucial issue is whether the incident which occurred at work on July 1, 1989 caused, accelerated or aggravated the back injury which the appellant suffered.
After a lengthy discussion of the causation issue, the hearing examiner informed plaintiff's counsel that he did not have any evidence before him of a causal connection. Plaintiff argued that the evidence of the causal connection was the fact that the *1000 plaintiff and his employer both testified that he injured himself and subsequently went to the hospital. Additionally, he pointed out that the medical records established that he had a laminectomy.
The hearing examiner stated "I want to see something that says that his ruptured intervertebral disk was caused by the accident."
In granting the motion to dismiss the court stated:
The evidence in this case, as presented to me, shows that this man went to the hospital and that he had a laminectomy. However, there's no evidence at all before me to show that as a result of this accident, he got any type of ruptured disk or anything else that resulted in a laminectomy; without some evidence of causal connection.(sic) I have to render a verdict in favor of the defendant, because there has to be a causal connection between any alleged accident that he had and between any alleged injury that he.(sic) I don't have any evidence of any injury other than the Charity Hospital, and that doesn't say anything about any accident that he had being connected with the accident. (sic) So, therefore, I'll go ahead and render a verdict, judgment for the defendant.... (emphasis added)
In his reasons for judgment, the hearing examiner found that:
The plaintiff testified that on July 1, 1989, he hurt his back while lifting a brake drum at his place of employment. On July 10, 1989, he went to Charity Hospital with the report of pain in his lower back. However, there is no reference in the Charity Hospital records to any accident.

On July 23, 1989, surgery was performed on him for a lumbar radiculopathy. Again there is no reference in the Charity Hospital report to any accident or to any causal connection between any accident and the back pain. Surgery was performed. Despite the surgery the plaintiff contends that he still has pain in his lower back. The employer Mr. J.D. Jones, also testified that on July 1, 1989, or shortly thereafter, the plaintiff told him that he hurt his back. However, the plaintiff did not go to the doctor. The employer did find out that later he went to Charity Hospital, and the employer visited him in Charity Hospital.
The case was submitted by the plaintiff without any evidence of any physician that the accident caused an injury. In every compensation case evidence must be offered to show that there was an injury and that there was a causal connection between the accident and the injury. In this case, no evidence was shown whatsoever that there was a causal connection between the accident of July 1, 1989 and the lumbar radiculopathy that was the final diagnosis on July 28, 1989, by Charity. The only evidence offered by the plaintiff was the testimony of the plaintiff, his employer, the report of Dr. James C. Butler and the Charity Hospital record. None of this evidence causally connects this accident with any injury or with any disability, and there is no medical evidence of disability to engage in any gainful occupation. (emphasis added)
Subsequent to the trial, additional medical records were received from Charity Hospital which documented appellant's admission to the hospital on July 18, 1989. Those records contain a notation that he was to be readmitted to the hospital on July 23, 1989.
The medical evidence in the record before us consists of incomplete medical records from Charity Hospital; a report from Dr Butler, one of the plaintiff's physicians; and a report from Dr. Nutik, the physician who performed the independent medical examination on behalf of the defendant, Hartford Insurance Company.

DISCUSSION AND LAW
Pursuant to the provisions of La. R.S. 23:1221(3), a claimant for supplemental earnings benefits must establish that he suffered a work related injury which resulted in a diminished earning capacity. More specifically, he must show that a job related injury resulted in his inability to *1001 earn wages equal to ninety per cent or more of the wages being earned at the time of injury.
The primary issue to be determined by this court is whether the hearing examiner erred in finding that the plaintiff failed to prove a causal connection between the accident that occurred on July 1, 1989 and the surgery that was performed on his back on July 23, 1989.
The employee in a worker's compensation proceeding has the burden of establishing his disability and a causal relation with the employment accident by a preponderance of the evidence. Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Lucas v. Ins. Co. of North America, 342 So.2d 591 (La.1977). Our review of the entire record in this case leads us to conclude that the plaintiff presented a prima facie case that he had suffered a job related injury.
In reaching the conclusion that the plaintiff had not established a causal connection of a work related injury the Hearing Examiner repeatedly stated that in order to establish causation, the claimant needed the testimony of a physician specifically stating that the accident caused the back injury. We disagree and find that the Hearing Examiner either failed to apply or misapplied the presumption of causation which has been established in the employee's favor and which ensues upon proof of the accident and a resulting disability. Walton v. Normandy Village Homes Assn, Inc., 475 So.2d 320 (La.1985).
Plaintiff's failure to call a doctor to specifically state that the July 1, 1989 accident was the cause necessitating back surgery on July 23, 1989 was not fatal to his action. Lack of testimony from a physician specifically stating that the plaintiff's back injury was definitely caused by the incident which occurred on his job on July 1, 1989 is not determinative of whether the accident caused the disc to occur or be aggravated. In Haughton v. Fireman's Fund American Insurance Companies, 355 So.2d 927 (La.1978) the court stated "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." Haughton, supra at 928. The testimony of the appellant and his employer, Mr. Jones, along with the medical reports from Charity, Dr. Butler and Dr. Nutik, in the absence of any countervailing evidence, constituted sufficient evidence to establish the necessary causal connection.
The appellant testified that although he had injured his back a few months before while at work, he was still able to work. Additionally, appellant's employer testified that prior to the accident of July 1, 1989, his work had been satisfactory. Appellant simply took over the counter medication and continued to function. However, after the accident of July 1, 1989, he was no longer able to work. Appellant also testified that up until the time of the two accidents on the job, he had never experienced any problems with his back and that since the second accident, he had not been involved in any other accidents. His employer, Mr. Jones, corroborated his testimony that he was able to work steadily prior to the accident. Mr. Jones specifically testified that his work had been satisfactory until the date of the accident.
In order for an employee in a worker's compensation case to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. Allor, supra. Where the plaintiff submits proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability. Allor, supra; Bridges v. Hood Motor Co., Inc., 477 So.2d 1261 (La. 4 Cir.1985). A claimant's disability is presumed to have resulted from an accident if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition. Walton, supra; Allor, supra; and Lucas, supra. Alternatively, *1002 a claimant's disability is also presumed if, before the accident he was in good health but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves in a situation where the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Walton, supra.
The appellant testified that prior to the accident which occurred on July 1, 1989 he had experienced problems with his back. Those problems started in either March or May of 1989. Those problems also stemmed from a pain he experienced while performing a brake job. He did not seek medical attention for that problem. Rather he simply took over-the-counter medication. Since he was able to continue working after the March or May incident, it is obvious that he was not disabled because of the first incident.
The fact that the medical records seem to indicate that the back pain experienced by the plaintiff may have started prior to the accident of July 1, 1989 is not relevant since a pre-existing condition does not bar a claimant's recovery. Holmes v. International Paper Co., 559 So.2d 970 (La.App. 2 Cir.1990). Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Thus, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Walton, supra at 324.
In Holmes, supra, we stated that the cause of disability is to be determined by the totality of the evidence, both medical and lay. Further, we stated that in evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of the testimony. Holmes, supra at 976. Also see Degruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1 Cir.1988) wherein the court noted that although the appellate court must give great weight to the factual conclusions arrived at by the trier of fact and reasonable evaluations of credibility, the appellate court is not required to affirm a trier of facts's refusal to accept as credible uncontradicted testimony, where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. Degruy, supra at 1131. In this case both the appellant and his employer testified that an accident occurred at the place of employment on July 1, 1989. The fact that no mention of an accident was found of hospital records dated July 10, 1989 does not contradict this testimony.
In finding that the plaintiff proved his case by a preponderance of the evidence, we cannot overlook the striking similarities in this case and Sykes v. Texas Eastern Transmission Corp., 531 So.2d 494 (La.App. 1 Cir.1988). The plaintiff in Sykes had previously injured his back and still suffered with intermittent back pain, but continued to work. Subsequently, he alleged that while working alone, he injured himself lifting a heavy gas control valve from the floor. This second accident aggravated the prior injury. In affirming the trial court's finding of a job-related injury and rejecting defendant's argument that plaintiff failed to show he sustained an on the job injury, the court noted that the record contained no evidence to contradict plaintiff's testimony that he sustained a work-related injury on the date in question. The court went on to say the defense offered no testimonial evidence and that the plaintiff's testimony was corroborated in some respects by the testimony of his wife *1003 and his supervisor. Interestingly, the medical reports in that case did not seem to establish any aggravation of plaintiff symptoms. Indeed, causation was not addressed in the medical reports. Nevertheless, the trial court had no problems finding a job-related injury.
Similarly, the claimant in Holmes, supra had already been suffering with knee and low back pain prior to being injured. He had been seen by his doctor two days before he was injured complaining of both knee and low back pain. While replacing an empty wrapper roller on a machine, he lifted one end of a 174 pound shaft and suddenly felt a "tingling" or pull in his lower back and a sharp pain through his right side into his leg. Since the pain quickly subsided, he thought he simply had pulled a muscle. He did not mention it to his co-worker or supervisor. He completed the task he was engaged in and left work. During the night, his pain got worse. Although in pain the next day, he returned to work. After working several hours in pain, he told his co-worker and supervisor about his problem. However, he continued to work until the shift ended. The next day he treated himself with heat. After the condition did not improve, he saw a doctor four days later. He was immediately hospitalized for diagnostic tests and surgery was recommended for a ruptured disc. A discectomy and laminectomy was performed at L5-S1 on March 31, 1988 (over one month after the accident). Significantly, the only expert medical opinion evidence presented at the trial of his workers compensation case was a deposition testimony from a physician. That doctor acknowledged the plaintiff's preexisting disc problem and opined that even without the lifting incident on the job, he may have required disc surgery later. Additionally, although he could not state when the ruptured disc occurred, he stated that the ruptured disc and plaintiff's complaints were consistent with and could have been caused by the lifting incident, and it was certainly conceivable that the lifting incident could have aggravated the plaintiff's pre-existing spinal condition. Both the trial court and the appeal court had no problem finding that based on these facts, the plaintiff was entitled to receive worker's compensation benefits because of his job related injury.
In this appeal, both the plaintiff and his employer testified that the accident occurred and that the plaintiff had been unable to work since the accident. A review of the submitted medical records supports the plaintiff's testimony that he sought medical care at Charity Hospital after the accident. Although the appellant subpoenaed the records from Charity Hospital for the hearing, Charity Hospital did not submit all the appellant's records. For some unexplained reason Charity Hospital has apparently lost some of the plaintiff's medical records. It would not be fair to penalize the appellant for circumstances beyond his control since the record before us demonstrates that both the appellant and the defendant had made numerous attempts to secure the complete medical records from Charity. Additionally, the record contains enough medical and circumstantial evidence to support a presumption of disability. Although the defendants did not call any medical witnesses, the medical report rendered by Dr. Nutik, the physician chosen by defendant Hartford Insurance Co. to conduct an independent medical examination, supports appellants position that he suffered a back injury which will preclude him from doing the heavy manual type work which he has always done in the past. Dr. Nutik's report also corroborates plaintiff's testimony that he was indeed seen at Charity Hospital for his injury prior to July 10, 1989. Dr. Nutik examined the appellant approximately four months before the trial and reviewed the medical records which had been forwarded to him by the defendant. In a report dated January 14, 1991 Dr. Nutik acknowledged that he had reviewed X-rays from Charity Hospital which had been taken on July 6, 1989 and July 12, 1989. Dr. Nutik concluded that the earlier x-rays revealed evidence of a herniated lumbar disc on the left side at the L5-sacral level. He further concluded that the patient appeared to have a reasonable result following his back surgery in that he had "only mild restriction of low back motion." *1004 His neurologic examination revealed evidence of residual calf atrophy as well as residual weakness of plantar flexion around the left foot. The x-rays, according to Dr. Nutik's report also revealed early degenerative disc disease at the L5-sacral level.
Based on his findings, Dr. Nutik concluded that the appellant would not be capable of returning to heavy mechanic work, but that he "should be able to retrain for a light to moderate type of job which would restrict lifting in excess of 50 pounds" Dr. Nutik anticipated that the appellant should be able to return to work in a 2 to 3 month period.
Dr. Nutik's medical report, in conjunction with the testimony and medical records from Charity, supports plaintiff's claim and demonstrates that he is entitled to receive the benefit of the presumption of disability.
In light of the fact that the appellant did not have a history of back problems prior to his injuries at work, that he only completed the ninth grade, has only performed strenuous manual labor, and in view of the fact that his back surgery did not completely solve his problems, it is apparent that he presented a prima facie case that he was entitled to receive supplemental benefits.
Once the plaintiff established the presumption of a causal relationship, the burden of producing evidence persuading the trier of fact that the injury suffered by the plaintiff was not work related shifted to the defendant. The defendant must now produce evidence and persuade the trier of fact that it is more probable than not that the work-injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability. Walton, supra.

STATUTORY PENALTIES AND ATTORNEY'S FEES
Plaintiff has requested that we award penalties and attorney's fees pursuant to La.R.S. 23:1201.2 which provides in part that:
... Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a reasonable attorney's fees for the prosecution and collection of such claims....
An assessment of penalties is proper for the nonpayment of compensation benefits unless nonpayment results from conditions over which the insurer or employer had no control or unless the employee's right to such benefits had been "reasonably controverted." A claimant's right to benefits will be deemed "reasonably controverted" if the factual and medical information of the employer reasonably counters that of the claimant. If the factual issue is substantial, penalties should be denied. Employers, however, must demonstrate that reasonable efforts were made to medically ascertain the worker's exact condition before denying benefits. Where a defendant fails to assemble and assess factual and medical information about a claimant's physical condition before denying a claim, he runs the risk of subjecting himself to statutory penalties. Holmes, supra.
In this case the insurer apparently never received any medical reports to substantiate the claimant's disability. The insurer therefore unilaterally ceased paying benefits in March, 1990 for the sole reason that it had no reports to indicate that the claimant was currently disabled. By letter dated June 20, 1990 to the hearing examiner, the defendant stated that since the date of the accident on July 1, 1989, it had received no medical reports concerning the claimant's treatment, surgery, or follow up. The insurer maintained that the information had been requested from the claimant and his attorney several times and that a request had been made to the hospital. Defendant does not specify the dates that the information was requested and we are not able to ascertain from the record whether the requests were made prior to terminating benefits. Nor do we know what information was used to initially pay benefits. The claimant maintained that he had been unable to obtain complete medical *1005 reports from Charity Hospital and that he had requested independent medical verification on several occasions, but that his request had been denied. However, claimant fails to give the dates that he requested independent medical verification. Additionally, as of October 19, 1990 when the employer and his insurer filed responses to pre-hearing questionnaire, the defendant had still not received a complete set of medicals from Charity Hospital, nor had defendant chosen an independent medical examiner or a vocational rehabilitation consultant.
Because both parties were unable to obtain the complete set of medicals from Charity Hospital prior to the time benefits were terminated, the hearing examiner may find that the insurer's actions of terminating benefits was not arbitrary and capricious. However, an employer or insurer is required to ascertain an employee's exact medical condition before benefits are terminated or denied. This can usually be accomplished by simply requiring the claimant to submit his medical records. Alternatively, pursuant to La.R.S. 23:1121 the employer also has the right to require that the claimant submit to a medical examination. That statute specifically states:
A. An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of this claim for compensation during the receipt by him of payments under this chapter....
Pursuant to this section, the employer had the right to request a medical examination immediately upon being notified of claimant's alleged injury. Notwithstanding the fact that it was paying benefits, the insurer apparently neglected to request such an exam and allegedly denied the request for such an exam after the claimant requested one.
The issue of whether an employer can discontinue the payment of benefits because of a lack of medical records has not been addressed by this court. However, in Pekinto v. Olsten Corp., 587 So.2d 68 (La. App. 4th Cir.1991) and Mills v. Guaranty Indus. Contractors, 557 So.2d 326 (La. App. 4 Cir.1990) we specifically held that pursuant to the provisions of La.R.S. 23:1201.2 an insurer may be liable for penalties and attorney's fees even if it properly discontinued benefits on the basis of a doctor's report but failed to reinstate benefits after receiving a subsequent report, indicating continuing disability.
Assuming, arguendo, that the defendants had a legitimate reason for stopping the payments of benefits in May, 1990 because of a lack of medical records to substantiate appellant's continuing disability, verification of his disabling status by their own independent medical examiner in January, 1990 should have resulted in the resumption of the payments. Additionally, defendants' argument that no medical records had been presented which could show that the appellant sought treatment prior to July 10, 1989 was misleading in view of Dr. Nutik's report indicating that he had reviewed X-rays from Charity Hospital that were taken on July 7, 1989.
Although our review of the record leads us to believe that the plaintiff may be entitled to attorney's fees, interest and penalties; we can not overlook the fact that the record is incomplete. The motion to dismiss was made after the defendant's first witness had been sworn but prior to the time that he commenced questioning the witness. The defendant should be given an opportunity to present evidence to support its contention that the back injury suffered by the plaintiff was not job related. Defendant should also be given a full opportunity to explain the reasons for not providing the plaintiff with an independent medical examination prior to discontinuing benefits. For this reason, the case must be remanded for a new trial on the merits.
For the foregoing reasons, the decision of the Hearing Examiner dismissing the plaintiff's claim is reversed. The case is remanded for a new trial and an evidentiary hearing to determine the amount and *1006 term that benefits, if any, should be paid. Additionally, the hearing examiner shall determine whether statutory penalties and attorneys fees should be assessed in this case.
REVERSED AND REMANDED.