671 So.2d 1008 (1996)
Lawrence BROCK
v.
MORTON GOLDBERG AUCTION GALLERIES, INC.
No. 95-CA-1324.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1996.
*1010 Timothy K. Lamy, Barker, Boudreaux, Lamy & Foley, New Orleans, for Plaintiff.
Fred T. Hinrichs, Christovich & Kearney, New Orleans, for Defendant.
Before SCHOTT, C.J., and ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
This is the second appeal in this worker's compensation case. In the previous appeal, the plaintiff appealed from a judgment in favor of the defendants. For several reasons set out in our opinion on that previous appeal, we found it necessary to reverse and remand. Lawrence Brock v. Morton Goldberg Auction Galleries, Inc., No. 93-CA-1078 (La.App. 4th Cir. Jan. 13, 1994), 631 So.2d 512, writ denied, 94-C-0395 (La. Apr. 4, 1994), 635 So.2d 1105.
A second hearing was held below. It was heard by a different Hearing Officer because the previous Hearing Officer left the bench. At the second hearing, the evidence consisted of: (1) the entire record from the first hearing; (2) additional testimony by the plaintiff, who also had testified at the first hearing; and (3) a deposition of Dr. Montz, whose report had been introduced into evidence at the first hearing. The facts of the case are set out in our opinion on the previous appeal.
After holding the second hearing, the Hearing Officer ruled in favor of the plaintiff as to disability, and awarded him temporary total disability benefits, but denied the plaintiff's request for surgery. He also denied the plaintiff's request for penalties and attorney's fees. The defendants then took this appeal.
As their first specification of error, the defendants argue that the Hearing Officer erred by "disregarding" the testimony of Dr. Montz. Prior to the first hearing, Dr. Montz was selected and appointed by the Office of Worker's Compensation, pursuant to La.R.S. 23:1123, to examine the plaintiff and to render a report. Dr. Montz did so and he opined that the plaintiff was not disabled and was a malingerer.
After the second hearing, the Hearing Officer, obviously disagreeing with Dr. Montz, found that the plaintiff was disabled. In so finding, the Hearing Officer expressly relied upon the testimony of the plaintiff's treating physician, Dr. Manale, and expressly found the plaintiff's testimony credible (presumably as to his pain and other symptoms).
The defendants argue that the Hearing Officer was clearly wrong or manifestly erroneous because he disagreed with Dr. Montz' conclusions. Specifically, the defendants argue that it was error for the Hearing Officer to credit Dr. Manale's testimony, and to "disregard" Dr. Montz' testimony, because Dr. Montz was selected and appointed to conduct an examination pursuant to La.R.S. 23:1123. That statute provides:
If any dispute arises as to the condition of the employee, the director, upon application of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination *1011 to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
La.R.S. 23:1122 (emphasis added).
The defendants point out the statute's provision that makes Dr. Montz' report "prima facie evidence." The defendants also cite Carlock v. Gross, 200 So.2d 353 (La.App. 4th Cir.), writ refused, 251 La. 60, 202 So.2d 662 (1967), for the proposition that Dr. Montz' opinion cannot be refuted legally by "mere contradiction" by the opinion of Dr. Manale. That case states:
The fact that the statute gives the force of prima facie presumption of correctness to the court-appointed expert's findings is indicative of legislative intent that this testimony carries a significant weight. An added measure of probative value is clearly implied by the statute in our opinion. It appears that the court in Dees v. Louisiana Oil Refining Corp., 162 So. 597 (La. App.2d Cir.1935), was of the same opinion. There it upheld the trial judge who apparently applied this rationale. We think the reason for this is obvious. The court-appointed medical expert is a wholly disinterested party, and it is more likely that his examination will be entirely objective. He has given no previous report or testimony which he might be inclined, though honestly, to vindicate. One who accepts the responsibility of performing a professional service which calls for the expression of an expert opinion is more likely to be sympathetic toward the interest of his client or patient. This is a factor to be considered, especially when the issue is a close one.
This prima facie presumption should not require a greater amount of evidence to refute than any other prima facie presumption, but a mere contrary opinion is not alone sufficient to overturn it. To hold otherwise would render LSA-R.S. 23:1123 meaningless.
The burden of proof which defendants carry in a case of this kind does not require more than a preponderance of the evidence. It may be assumed in every case there will be some testimony to contradict the court-appointed medical examiner.
It has been said:
"The divergence of opinion among the doctors in this case, as is in all others of a like kind, is regrettable, but in cases of this kind, if compensation were not allowed because of the conflicting opinions of the doctors, there would never be a case in which a compensation claimant could or would be awarded compensation." Nash v. Solvay Process Co., 189 So. 493 (La. App.2d Cir.1939) at 508.
The same may be said of the discontinuance or modification of the award.
If mere contradiction is construed as rebuttal sufficient to overcome a prima facie presumption, then the relief provided the employer by LSA-R.S. 23:1331 is more fanciful than real.
Carlock, 200 So.2d at 359-60 (footnote omitted). However, Carlock has been interpreted and added to by our more recent decision in Green v. Louisiana Coca Cola Bottling Co., 477 So.2d 904 (La.App. 4th Cir.), writ denied 478 So.2d 910 (La.1985), which states:
The Carlock case was a modification proceeding wherein the employer sought termination of compensation benefits. Although the Court in that case made it clear that the legislative intent of the statute was to give significant weight to the findings of a court appointed expert, the court also qualified that interpretation by stating:
"The court appointed medical expert, is a wholly disinterested (emphasis added) party, and it is more likely that his examination will be entirely objective."
"This prima facie presumption should not require a greater amount of evidence to refute than any other prima facie presumption, but a mere contrary opinion is not alone sufficient to overturn it." Carlock, supra. at pp. 359-360.
We interpret the Carlock decision to mean that if the trial court concludes that the appointed physician is a disinterested party, his conclusions will be entirely objective and accordingly his opinion will be given significant weight. However, the weight *1012 accorded that opinion can be refuted by other credible evidence. We add to the Carlock interpretation of La.R.S. 23:1123 our own interpretation that the legislature never intended the opinion of a court appointed physician to be conclusive. That opinion cannot be substituted for the decision making functions of the trial court. The trial judge makes the ultimate determination based on his opinion of the credibility of each witness, whether lay person or expert, as well as the weight to be given to their testimony. The significant weight given to the opinion of the court appointed expert can vary in accordance with the various factors which a trial judge utilizes in evaluating the testimony of any other witness. Thus, the significant weight can be lesser or greater depending on the qualifications or expertise of the physician, the type of examination he performs, his opportunity to observe the patient, his review of other physicians' examinations and tests, and any other relevant factors.
Green, 477 So.2d at 906 (emphasis added). Accord Clark v. Atlantic Painting Co., 521 So.2d 505, 508 (La.App. 4th Cir.1988); Menard v. Winn Dixie Louisiana, Inc., No. 93-1497 (La.App. 3rd Cir. 6-1-94), 640 So.2d 775, 783.
In light of Green, the Hearing Officer's decision to credit the opinion of Dr. Manale, rather than that of Dr. Montz, does not constitute reversible error simply because Dr. Montz was selected and appointed under La.R.S. 23:1123. Instead, we must review the Hearing Officer's decision as we do other findings of fact in which expert testimony is relevant.
The "clearly erroneous/manifest error" standard of appellate review applies in worker's compensation cases. Alexander v. Pellerin Marble & Granite, No. 93-C-1698 (La. 1-14-94), 630 So.2d 706, 709-710; Freeman v. Poulan Weed Eater, No. 93-C-1530 (La. 1-14-94), 630 So.2d 733, 737-38. Under that standard, we may not disturb the Hearing Officer's finding of fact, regardless of our own view of the evidence, so long as that finding is reasonable. Stobart v. DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). "Where the testimony of expert witnesses differ, it is the responsibility of the trier of fact to determine which evidence is most credible. Consequently, on appellate review the trial court's reasonable findings, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1111 (La.1990) (citations omitted).
In the present case, Dr. Montz saw the plaintiff a single time. The entire visit, at which Dr. Montz took a history and performed an examination, lasted about twenty minutes. Dr. Montz conceded in his deposition that he probably can make a better diagnosis when he sees a patient on repeat occasions. But, of course, he was asked to see the plaintiff for only a single visit.
Dr. Manale saw the plaintiff at roughly monthly intervals for a period of about three years (as of the date of the first hearing). The first of these visits was about ten days after the day of the plaintiff's work-related accident and the most recent (as of the date of the first hearing) was less than a month before the first hearing.
It is apparent, and the Hearing Officer so stated, that Dr. Manale accepted the plaintiff's reports of pain and other symptoms as true. It also is apparent that Dr. Montz did not believe the plaintiff. The Hearing Officer heard and saw the plaintiff testify live at the second hearing and expressly found the plaintiff to be credible.
Because Dr. Manale had seen the plaintiff many, many more times than Dr. Montz, it is not unreasonable for the Hearing Officer to have found Dr. Manale's opinion more persuasive. Also, because Dr. Montz' opinion was at least to some extent predicated on untruthfulness on the part of the plaintiff (particularly Dr. Montz' opinion that the plaintiff was a malingerer), whereas the Hearing Officer found the plaintiff credible, it was not unreasonable for the Hearing Officer to find Dr. Montz' testimony less persuasive. Consequently, the Hearing Officer's finding that the plaintiff was disabled, as per Dr. Manale's opinion and contrary to Dr. *1013 Montz' opinion, was not clearly wrong or manifestly erroneous.[1]
As their second assignment of error, the defendants argue that the plaintiff failed to prove causation of his disability by his work-related accident. While driving a truck, the plaintiff was in a vehicle accident and was struck in the back by a statue that was in the back of the truck. He testified and gave Dr. Manale a medical history that he had no back problems before the accident and that he had pain, numbness and other symptoms starting with the accident. The defendants argue that the plaintiff's pain and other symptoms are the result of degenerative changes, resulting from the natural aging process, in the plaintiff's back. Most specifically, the defendants argue that the plaintiff's treating physician, Dr. Manale, did not testify that the plaintiff's pain and other symptoms were caused by the accident as opposed to degenerative changes. Dr. Manale testified as follows:

JUDGE COREY:
And it is your opinion, that if an accident was casually connected with a degeneration or pain found?

THE WITNESS:
No, I can't say that. The reason is that studies have shown that a certain percentage of men age thirty years, just like this man, will have degenerating discs in their lumbar spine. And these are asymptomatic people; patients without pain. So, I cannot say that this accident caused the symptomcaused the picture, the bulging disc, the degeneration; I can't say that.
What I am saying is that either this man had a normal disc before the accident and the accident did all the things that we see on a CAT scan and MRI, or that he already had a degenerating disc which was probably so, if I had to say, and that the accident triggered the symptoms, or caused the symptoms of which he now complains. Since the disc was already weakened anatomically.
Q We were talking a little bit about the casual effect between Mr. Brock's condition and the automobile accident. Is it true that the changes in his spine at L4-5 could have resulted from natural aging?
A Yes.
Q And isn'tis it also true that the findings on all the diagnostic tests could be a direct result from the automobile accident?
A Yes, but it's less likely.
Q Okay. Isn't it also true, that Mr. Brock could have had the degenerative L4-5 disc and not experience any pain?
A Yes.
Q It could be in the same condition it's in today, he could be functioning and asymptomatic?
A Absolutely.
Q All right. And, isn't it also true that a person with a degenerativethe type of degeneration that Mr. Brock has who is asymptomatic and functioning fine, is then involved in an automobile accident where a large object strikes him in the lower back; that the trauma can cause the disc to become painful?
A I believe that's probably what happened.
Dr. Manale's testimony is that, most probably, the plaintiff had degenerative changes in his back before the accident but that, until aggravated by the accident, those degenerative changes were not disabling. In other words, the accident caused the disability by aggravating a pre-existing condition. In fact, Dr. Montz conceded at least the possibility of Dr. Manale's diagnosis. In his deposition, Dr. Montz testified:
Q Isn't it, also, true that a degenerative condition in the lumbar spine can be aggravated by trauma?
A Yes.

*1014 Q So that it could render an asymptomatic degenerative condition symptomatic?
A Yes.
Q Mr. Brock's history of being struck in the back by a 200 pound piece of furniture or statute, is that the type of accident that you would expect to cause low back pain?
A That type of accident could cause lower back pain.
Q Is it, also, the type of accident that could aggravate a degenerative spinal condition?
A Yes.
Also, because the plaintiff (found credible by the Hearing Officer) testified that he had not back pain or symptoms before the accident, that the pain and symptoms causing his disability commenced with the accident, and that there was no other accident, he benefits from a presumption that the accident caused his disability. E.g., Connor v. Jones Bros. Enterprises, 606 So.2d 996, 1001-1002 (La.App. 4th Cir.1992).
Lastly, we note that: "Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Connor, 606 So.2d at 1002. Thus, the plaintiff proved causation by proving that the accident aggravated his pre-existing condition so as to make it disabling.
As their third and final assignment of error, the defendants argue that the Hearing Officer erred by finding the plaintiff credible. The plaintiff testified live at the second hearing so the Hearing Officer had the opportunity to hear and see him. The question of the credibility of witnesses is primarily the responsibility of the Hearing Officer and his findings in that regard will not be set aside on appeal unless they are manifestly erroneous or clearly wrong. Alexander v. Pellerin Marble & Granite, No. 93-C-1698 (La. 1-14-94), 630 So.2d 706, 709-710, Freeman v. Poulan/Weed Eater, No. 93-C-1530 (La. 1-14-94), 630 So.2d 733, 737-38; Stobart v. DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
The defendants, examining the medical histories given to doctors by the plaintiff, and his trial testimony, point out some inconsistencies. The plaintiff gave somewhat varying statements as to the weight of the statue that struck him. However, we find that this is explainable by the fact that the statements were estimates and estimates can naturally vary as time passes.
The defendants also point to some inconsistencies between the plaintiff's testimony as to his pain and the symptom he reported to doctors. However, the record reflects that the pain referred to at the hearing was at a time well after most of the doctor visits. Moreover, the doctor visits took place over several years with the complaints of pain changing over time.
The defendants also point to Dr. Montz' testimony that the plaintiff is a malinger. However, as we have discussed above in connection with the first assignment of error, Dr. Manale obviously did not believe the plaintiff was a malinger, and it was reasonable for the Hearing Officer to credit Dr. Manale's opinion over Dr. Montz' opinion.
In short, reasonable minds could differ as to the import of the evidence as to the plaintiff's credibility. Thus, we cannot hold that the Hearing Officer was clearly wrong or manifestly erroneous in finding the plaintiff credible.
Finally, the defendants have attached to their reply brief a copy of a "Petition for Nullity of Judgment, or Alternatively, Petition for Modification of Judgment" which they have filed or plan to file with the Office of Worker's Compensation. Also attached to their reply brief are an affidavit and some employer's wage reports. The gist of all these attachments is an allegation that the plaintiff is now employed and so is no longer and/or never has been temporarily totally disabled. However, none of these attachments are part of the record for this appeal so we cannot consider them. The allegations and issues raised by the attachments are, apparently, being raised with the Office of Worker's Compensation. In this *1015 decision we express no opinion whatsoever about the allegations or issues raised by the attachments to the reply brief.
For the foregoing reasons, the judgment of the Office of Worker's Compensation is affirmed.
AFFIRMED.
SCHOTT, C.J., concurs in the result.
NOTES
[1] The defendants' brief puts some emphasis on the fact that Dr. Montz did review a report of a discogram performed on the plaintiff. Dr. Montz' deposition, taken after the first appeal and before the second hearing, so reflects and was introduced into evidence at the second hearing. Thus, Dr. Montz and Dr. Manale, at least by the second hearing, were on an even footing as to familiarity with medical test results, and this would have been apparent to the Hearing Officer from Dr. Montz' deposition.