733 So.2d 1222 (1999)
Elsner ANGULO
v.
ATH PAINTERS AND CONSTRUCTION, INC.
No. 98-CA-2363.
Court of Appeal of Louisiana, Fourth Circuit.
May 5, 1999.
*1223 Nicolas Estiverne, Nicolas Estiverne & Associates, New Orleans, Counsel for Plaintiff/Appellee.
Sammie M. Henry, Baton Rouge, Counsel for Defendant/Appellant.
Court composed of JUDGE JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER and Judge Pro Tempore PHILIP C. CIACCIO.
ARMSTRONG, Judge.
This is a workers' compensation case. After trial, the Workers' Compensation Judge found the employee entitled to Supplemental Earnings Benefits and medical benefits. The Workers' Compensation Judge also found that the employer was arbitrary and capricious in terminating compensation benefits and awarded statutory penalties and attorney's fees. The employer and its workers' compensation insurer appeal the award of Supplemental Earnings Benefits and the award of penalties and attorney's fees. We hold that the Workers' Compensation Judge was not clearly wrong/manifestly erroneous in finding that the employee suffered some loss of earning capacity and, therefore, we affirm the award of Supplemental Earnings Benefits. We further hold that, under the applicable legal standard, the employer's actions did not constitute "arbitrary and capricious" conduct, and so we reverse the award of statutory penalties and attorney's fees.
Claimant Elsner Angulo was employed as a painter by ATH Painters and Construction ("ATH"). ATH's brief on appeal states that Mr. Angulo was actually employed by Francisco Gurdian and that Mr. Gurdian was a subcontractor to ATH. However, from the record below, including ATH's Answer and pretrial submittals, it is apparent that there is no dispute that Mr. Angulo was an employee of ATH within the meaning of the workers' compensation laws for purposes of this claim.
On November 22, 1994, Mr. Angulo, while working for ATH, fell from a ladder *1224 and was injured. He was seen at Baptist Hospital. He was diagnosed as having suffered a fracture to his left shoulder, lacerations to his scalp and fractures to several of his vertebrae.
ATH began to pay compensation benefits to Mr. Angulo based upon a wage of $5.60 per hour. Mr. Angulo filed a claim alleging that his wage had been $10.00 per hour. ATH and Mr. Angulo settled this dispute in March 1995 by an agreement that Mr. Angulo's average weekly wages had been $390.00.
Mr. Angulo's injuries were followed by the physician of his choice, Dr. Henry Evans. Dr. Evans examined Mr. Angulo for the first time on February 13, 1995 and took x-rays on that same date. Dr. Evans determined that Mr. Angulo was disabled due to the injury to his left shoulder. Dr. Evans followed Mr. Angulo at two week intervals until March 13, 1995.
On March 15, 1995, Dr. Arthur Axelrod, apparently a physician of ATH's choice, examined Mr. Angulo. Dr. Axelrod found that Mr. Angulo suffered from restricted movement in his left shoulder but was otherwise normal.
Some time later, Mr. Angulo left for Nicaragua to care for his mother who was dying from cancer. While in Nicaragua, he was seen by a Nicaraguan physician.
While Mr. Angulo was in Nicaragua, ATH terminated payment of his compensation benefits. ATH states that this was done because ATH was unable to determine Mr. Angulo's condition at that time. Mr. Angulo disputed the propriety of ATH's termination of benefit payments.
After returning to New Orleans from Nicaragua, Mr. Angulo was seen by Dr. Evans again on September 8, 1995. Dr. Evans found that Mr. Angulo was still disabled.
On October 25, 1995, Mr. Angulo again was examined by Dr. Axelrod. Dr. Axelrod again found that Mr. Angulo had restricted motion in his left shoulder but was otherwise normal. Dr. Axelrod assigned to Mr. Angulo a 15% impairment and found that Mr. Angulo could work.
On January 4, 1996, Mr. Angulo and ATH made an agreement to settle their dispute with respect to the ATH termination of benefit payments which occurred while Mr. Angulo was in Nicaragua. It was agreed that ATH would pay Mr. Angulo's medical bills incurred while he was in Nicaragua, that ATH would reinstate the compensation benefit payments, and that ATH would pay Mr. Angulo $2,500 in attorney's fees.
ATH requested that the Workers' Compensation Office appoint an independent physician to examine Mr. Angulo. Dr. Terry Habig was so appointed and he examined Mr. Angulo on March 18, 1996. Dr. Habig found that Mr. Angulo had limited movement in his left shoulder, and would have difficulty working as a painter, but could return to work. Dr. Habig put a number of restrictions on what physical activities Mr. Angulo could undertake if he returned to work.
ATH prepared for the signature of Mr. Gurdian (the ATH "subcontractor" who had hired Mr. Angulo) a July 30, 1996 letter to Mr. Angulo offering Mr. Angulo a job as of August 12, 1996. The letter described the job in terms obviously intended to comply with the various restrictions which Dr. Habig had placed on Mr. Angulo's physical activities. The letter stated that the wage paid would be $6.00 per hour. The letter was copied to Mr. Angulo's counsel.
Upon receipt of Mr. Gurdian's letter, Mr. Angulo's counsel telephoned Mr. Gurdian and, under an assumed name, said that he was looking for work and asked whether Mr. Gurdian had a job. Mr. Gurdian answered back that business was slow and that he had no work available. Mr. Angulo's counsel then wrote a letter to the Workers' Compensation Office, attaching a copy of Mr. Gurdian's letter, relating the telephone conversation with Mr. Gurdian, and stating that ATH must be engaged in *1225 some sort of fraud. As an aside, we note that Mr. Gurdian testified that, in the telephone conversation, he denied having any work available because he hired people based upon referrals only. Also, the Workers' Compensation Judge ultimately determined that the job offer was "suspicious" but that Mr. Angulo had not proven fraud. In any event, Mr. Angulo did not report for work with ATH or Mr. Gurdian.
After Mr. Angulo did not report to work in response to Mr. Gurdian's July 30, 1996 letter, ATH first reduced and then, on April 1, 1997, terminated payment of benefits to Mr. Angulo. On April 3, 1997, Mr. Angulo filed pleadings challenging ATF's actions. After a defense exception and an amendment of pleadings by Mr. Angulo, the matter went to trial on March 19, 1998.
The Workers' Compensation Judge rendered judgment as follows:
1.) Claimant is temporarily and totally disabled and unable to earn 90% of his pre injury wages, and is therefore entitled to reinstatement of his Supplemental Earning Benefits, as of April 1, 1997, together with interest on each past due amount from date due until paid, based upon an average weekly wage of $500.00 (50 hours per week at $10.00 per hour) per week and a current earning capacity of $240.00 (40 hours per week at $6.00 per hour) per week. Claimant is not entitled to recover underpaid indemnity benefits he received prior to April 1, 1997, as the parties had agreed upon a weekly compensation rate of $260.00.
2.) Defendant, ATH PAINTING, INC., and its carrier, Louisiana Workers' Compensation Corporation were arbitrary and capricious in terminating claimant's benefits, and as such, claimant is entitled to penalties in the maximum amount of $2,000.00 or 12% of past due benefits, whichever is greater, and attorney's fees in the amount of $5,000.00.
3.) Claimant is entitled to payment of any and all outstanding and future medical bills.
4.) Although defendant's, ATH PAINING, INC., method of attempting to get claimant returned to work (and providing unsubstantiated figures of hours worked and wages earned to the insurer for purposes of computing benefit amount, as there were neither records nor clear testimony of claimant's actual earnings) appears suspicious of having been done for the purpose of defeating claimant's right to workers' compensation benefits, claimant has failed to prove actual fraud by clear and convincing evidence, as such defendant cannot be penalized under LSA R.S. 23:1208.
5.) Defendant is to pay all cost of these proceedings.
We note that only portions of the judgment below are brought before us in the present appeal: First, ATH appeals the award of Supplemental Earnings Benefits to Mr. Angulo. Second, ATH appeals the award of statutory penalties and attorneys fees. Third, ATH does not appeal the award of medical benefits. Fourth, because Mr. Angulo did not file an appeal or an answer to appeal, he necessarily has not appealed the rejection of his fraud claim. Fifth, for the same reason, Mr. Angulo necessarily has not appealed the determination that he is not entitled to recover underpaid benefits for periods prior to April 1, 1997. Sixth, ATH has not appealed the judgment's award of the costs of the proceedings below.
We turn now to ATH's appeal of the award of Supplemental Earnings Benefits ("SEB"). ATH argues only that SEB should not have been awarded at all (i.e. the issue of entitlement) and raises no issue as to the quantum of SEB.
Paragraph (1) of the judgment below, which awards SEB, makes a reference to temporary and total disability. However, Paragraph (1) of the judgment very expressly *1226 awards SEB, and not benefits for temporary and total disability, and very expressly makes the factual findings necessary to the calculation of SEB. Thus, we have no doubt that the judgment awards SEB and not benefits for temporary total disability. The judgment's reference to temporary and total disability is surplusage. See generally, e.g., H. Alston Johnson III, 13 Louisiana Civil Law Treatise: Workers' Compensation Law and Practice § 271 (3rd ed.1994) (discussing temporary total disability benefits and SEB and showing the distinction between the two types of benefits).
An injured worker such as Mr. Angulo is entitled to SEB if he is, as a result of his injury, unable to earn wages equal to 90% of his wages at the time of injury. La. R.S. 23:1221(3)(a). The amount of the benefit is two-thirds of the difference between his average monthly wages at the time of injury and his average monthly wages that he earns or is able to earn. Id. See generally, e.g., Workers' Compensation Law and Practice, supra § 276.
ATH argues that Mr. Angulo is not entitled to SEB because he could have reported for the job offered by Mr. Gurdian's July 30, 1996 letter. However, the Workers' Compensation Judge found that Mr. Angulo's average weekly wage was $500.00 (50 hours per week at $10.00 per hour) and the letter offered a wage of $6.00 per hour and, with no hours per week specified by the letter, we presume that the letter implied no more than a normal 40 hour work week. Thus, the letter did not offer a job paying 90% of Mr. Angulo's average monthly wage at the time of injury. In fact, because the judgment finds that Mr. Angulo's earning capacity is $6.00 per hour for a 40 hour week, the judgment is perfectly consistent with the job offer letter. In other words, the earnings capacity that the Workers' Compensation Judge found for Mr. Angulo is the same as the earnings Mr. Angulo would have had (per the letter) if he had accepted the job offered by the letter.
ATH also argues that, based upon the medical evidence, the Workers' Compensation Judge could not have found Mr. Angulo disabled so as to be unable to earn 90% of his average monthly wages at the time of the accident. Dr. Evans, the physician chosen by Mr. Angulo, found Mr. Angulo disabled and unable to work. Dr. Axelrod, apparently the physician chosen by ATH, noted restricted motion in Mr. Angulo's shoulder but assessed him as only 15% impaired and found him able to work as a painter. Dr. Habig, the independent physician, reached conclusions between the two extremes of Dr. Evans and Dr. Axelrod, noted restricted movement in the left shoulder, found that Mr. Angulo would have difficulty working as a painter, but found that Mr. Angulo could work subject to a number of physical restrictions.
The Workers' Compensation Judge reached factual conclusions between the extremes of Dr. Evans and Dr. Axelrod and most consistent with the findings of Dr. Habig. Specifically, the Workers' Compensation Judge found that Mr. Angulo could work a normal 40 hour week but could earn only $6.00 per hour rather than his previous $10.00 per hour.
The findings of fact of the Workers' Compensation Judge are subject to appellate review under the clearly wrong/manifest error standard of review. E.g. Brock v. Morton Goldberg Auction Galleries, Inc., 95-1324 (La.App. 4 Cir. 3/14/96), 671 So.2d 1008, 1012. Under that standard, we may not disturb the findings of fact below, regardless of our own view of the evidence, so long as those findings are reasonable. Id. Where the evidence of experts (such as the doctors in this case) differs, it is the responsibility of the finder of fact to determine which expert is most credible and that determination will not be disturbed upon appeal so long as it is reasonable.
In the present case, we cannot say that the Workers' Compensation Judge's findings of fact as to Mr. Angulo's disability, *1227 and her evaluations of the doctors' conflicting opinions, was unreasonable. The Workers' Compensation Judge's findings were most in accord with those of the independent physician, Dr. Habig, and he was disinterested compared with the other two doctors because he was chosen neither by the claimant nor by the employer. See Brock, supra. Also, even the physician apparently chosen by ATH, Dr. Axelrod, found that Mr. Angulo had restricted motion in his left shoulder. Further, common sense suggests that the restriction in left shoulder movement would impact Mr. Angulo's ability to work. Lastly, per Mr. Gurdian's July 30, 1996 letter, even ATH believed that Mr. Angulo's wage should be the $6.00 per hour found by the Workers' Compensation Judge to be Mr. Angulo's earning capacity.
We turn next to the issue of whether ATH acted "arbitrarily and capriciously," so as to be subject to statutory penalties and attorney's fees, when it terminated payment of benefits on April 1, 1997. An employer is not subject to statutory penalties and attorney's fees if it had a "reasonable basis" to object to the payment of benefits. Dean v. K-Mart Corp., 97-2850 (La.App. 4 Cir. 7/29/98), 720 So.2d 349, 355.
The fact that the Hearing Officer awarded benefits, and we have affirmed that award, does not mandate the award of penalties or attorney's fees.
It should be clear that the mere fact that the employer refuses to pay on the ground that he denies liability entirely, or denies that he owes as much as is demanded, is not enough to warrant the imposition of the penalty even though the facts and law developed at the trial show that he was in error in refusing. The refusal must have been without reasonable foundation in fact or law.

Workers' Compensation Law and Practice, supra at 405. See generally McGaughey v. New Orleans, 96-1331 (La.App. 4 Cir. 5/28/97), 695 So.2d 1109; Maiden v. Crossroads of Louisiana, 95-1985 (La.App. 4 Cir. 7/24/96), 678 So.2d 75; Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982).
Dean, supra.
In the present case, it simply cannot be said that ATH was without any reasonable basis to contest Mr. Angulo's claim for benefits as of April 1, 1997. At least as early as October 25, 1995, over five months earlier, Dr. Axelrod had examined Mr. Angulo and concluded that Mr. Angulo could work as a painter. The fact that the Workers' Compensation Judge ultimately rejected Dr. Axelrod's opinion does not negate the fact that, as of April 1, 1997, ATH did have a "reasonable basis" to object to paying benefits to Mr. Angulo. Dean, supra. Thus, ATH cannot be subject to statutory penalties and attorney's fees in this case.
For the foregoing reasons, we reverse the award of statutory penalties and attorney's fees in this case but otherwise affirm the judgment of the trial court.
AFFIRMED IN PART; REVERSED IN PART.