761 So.2d 30 (2000)
Kirk JOHNSON
v.
ABRAHAM PAYTON ROOFING AND COMPANY.
No. 99-CA-1967.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 2000.
*31 James R. Hashek, Roberts, Katz & Baudier, New Orleans, LA, Counsel for Plaintiff/Appellant.
Jeffrey J. Warrens, Egan, Johnson & Stiltner, Baton Rouge, LA, Counsel for Defendant/Appellee.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III).
ARMSTRONG, Judge.
This is a worker's compensation case. The Worker's Compensation Judge ("WCJ") of the Office of Worker's Compensation denied compensation indemnity payments and non-emergency medical care because of the claimant's "intoxication and resulting impairment which caused the accident". (All emergency medical treatment has been paid for). The claimant appeals. We find that the WCJ's decision was not clearly wrong/manifestly erroneous and, therefore, we will affirm.
Claimant Kirk Johnson worked as a laborer for a roofing company. On September 25, 1998 he worked on several jobs including one on the roof of a three story residence on Jackson Avenue in New Orleans. He and his co-worker and supervisor, Ronald Payton, ascended and descended a thirty-foot ladder to the roof of the Jackson Avenue house to perform work there. About 4:30 p.m., they needed to descend the ladder. Mr. Payton went down first. Then, apparently as Mr. Johnson was just starting to descend the ladder, he fell. His fall was about 30 feet and he suffered multiple fractures and was seriously injured.
Mr. Payton called 911 and Mr. Johnson was taken by ambulance to Charity Hospital. Blood and urine tests administered to *32 Mr. Johnson shortly after his arrival at the hospital showed that he had a blood serum alcohol level of .124 and he tested positive for cocaine. The hospital records states that he fell while he was intoxicated and that he was too intoxicated to give informed consent.
On October 1, 1998, Charles Cranfield, an adjuster for the worker's compensation insurer, reviewed Mr. Johnson's medical records. He was unable to interview Mr. Johnson that day due to Mr. Johnson's condition at that time. Based upon the medical records, including the positive tests for alcohol and cocaine, he determined, at least tentatively, that benefits would not be paid. On October 8, 1998, Mr. Cranfield returned to the hospital and, this time, he was able to interview Mr. Johnson. In the interview, Mr. Johnson denied any alcohol or drug use at the time of the accident. However, the insurer continued with its position that benefits would not be paid. On one of his visits to the hospital, Mr. Cranfield was joined by a registered nurse, who worked for the insurer, to assist with review of the medical records.
Later, Mr. Johnson was deposed and, in his deposition, denied that he had consumed alcohol on the day of his accident and stated that he had not used cocaine for at least two months before the accident. He did describe his long-term, daily very heavy drinking and occasional use of crack cocaine. He also stated that, at the time he was deposed, he had problems with his memory and with confusion.
Mr. Payton also was deposed. He testified that, while he worked with Mr. Johnson throughout the day of the accident, there were times when he left on errands and Mr. Johnson was alone. He also testified that it did not appear to him that Mr. Johnson was intoxicated the day of the accident and that he did not notice anything unusually about Mr. Johnson.
Lastly, Dr. William George was deposed. He was hired as an expert witness by the insurer. He is a toxicologist and teaches at Tulane University Medical School. He testified that the .124 serum alcohol content translated into a .111 blood alcohol content. He also testified that the blood alcohol content had been diluted, after the accident but before the blood test, because Mr. Johnson had been given two liters of intravenous fluids during that interval. Also, there had been a determinable amount of metabolization of blood alcohol between the time of the fall and the time of the blood test. Taking into account the dilution and the metabolization, Dr. George calculated that, at the time of the fall, Mr. Johnson's blood alcohol content was .160 and that Mr. Johnson would have been substantially impaired in terms of reaction time, coordination, judgment and other factors. He noted that .100 blood alcohol is legally intoxicated for purposes of driving. He also testified that, to have a .160 blood alcohol content at the time of the accident, Mr. Johnson had to have consumed alcohol that day. With respect to the use of cocaine, Dr. George testified that the presence of cocaine metabolites could not be detected more than 72 hours after cocaine use so Mr. Johnson had definitely used cocaine within 72 hours of the accident.
Mr. Johnson, Mr. Payton and Dr. George all testified at trial by deposition. Mr. Cranfield testified live at trial. The hospital records of Mr. Johnson were introduced into evidence.
With some exceptions not relevant here, no worker's compensation benefits are due for an injury caused by the claimant's intoxication at the time of the injury. La. R.S. 23:1081. The burden of proof as to intoxication is upon the employer. Id. However, if their injured employee's blood alcohol level at the time of the accident was .100 or more, it is presumed that the employee was intoxicated. La. R.S. 23:1081(3)(c). Once it had been proven that the employee was intoxicated at the time of the accident, then it is presumed that the accident was caused by the intoxication. *33 La. R.S. 23:1081(12). The burden is then on the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer. Id.[1]
Mr. Johnson's first argument on appeal is that the WCJ applied the presumptions of La. R.S. 23:1081 as conclusive presumptions rather than rebuttable presumptions. Absolutely nothing in the WCJ's judgment or in the transcript of the trial suggests that the WCJ applied the presumptions of La. R.S. 23:1081 as conclusive rather than rebuttable presumptions. The statute indicates that the presumptions can be rebutted by the employee and we will not assume without reason that the WCJ did not follow the statute.
Mr. Johnson's second argument on appeal is that he successfully rebutted the presumption of intoxication and/or the presumption of causation by the testimony of Mr. Payton. Obviously, the WCJ did not feel that Mr. Payton's testimony was sufficient to rebut the presumptions of intoxication and causation. The WCJ's findings of fact, including her evaluations of credibility of the witnesses, are reviewed on appeal under the clearly wrong/manifestly erroneous standard and may not be disturbed upon appeal so long as they are reasonable. E.g., Angulo v. ATH Painters and Construction, Inc., 98-2363 (La.App. 4 Cir. 5/5/99), 733 So.2d 1222.
There are several reasons why the WCJ may not have been persuaded by Mr. Payton's testimony. First, from the deposition testimony of both Mr. Payton and Mr. Johnson, it appears that Mr. Payton was not in a position throughout all of the day of the accident to closely observe Mr. Johnson. In fact, Mr. Payton was not even at the job site with Mr. Johnson for substantial periods of time. Second, Dr. George testified that a long-term very heavy drinker such as Mr. Johnson would learn to control and conceal outward manifestations of intoxication, particularly in a work environment. Third, Mr. Payton may have been biased out of sympathy for the badly-injured Mr. Johnson, particularly as there is insurance available to pay his claim.
Mr. Johnson also relies upon his own deposition testimony as rebutting the presumptions of intoxication and causation. Of course, as the claimant, Mr. Johnson is an interested witness. Also, in his deposition, he testified that he has memory problems and becomes confused.
Lastly, the deposition testimony of Dr. George was to the effect that, based upon the fact that Mr. Johnson had a blood alcohol level of .160 at the time of the accident, he had to be very significantly impaired in terms of reaction time, coordination, judgment, etc., at the time that he fell.
In sum, we cannot say that the WCJ was clearly wrong/manifestly erroneous in concluding that Mr. Johnson failed to rebut the presumptions of intoxication and causation.
Mr. Johnson's third argument on appeal is that Dr. George did not provide to the insurer any opinion as to Mr. Johnson's intoxication prior to Dr. George's deposition and that, consequently, the insurer had no grounds to decline to make benefit payments from the date of the accident until the date of Dr. George's deposition. The short answer to this argument is that the insurer did have grounds to withhold payment. Mr. Cranfield examined Mr. Johnson's hospital records a few days after the accident. Mr. Cranfield had the assistance of a registered nurse for the examination of the hospital records. *34 Those hospital records contained positive tests (done just after the accident) for alcohol and cocaine and stated that Mr. Johnson was intoxicated when he fell and when he was admitted to the hospital. The information from the hospital records, combined with the statutory presumptions, gave the insurer reasonable grounds to withhold payment until the disposition of Mr. Johnson's claim.
Mr. Johnson's fourth argument on appeal is that "intoxication" and "impairment" are not, legally or scientifically the same things. This argument is not very clear in Mr. Johnson's brief but we will do our best to respond to it. Based upon the apparent statutory scheme, we believe that, generally speaking at least, the statute uses the term "intoxication" in terms of alcohol affecting a person in a way that could contribute to the person suffering an accident. Based upon Dr. George's deposition testimony, we believe that he used the term "impairment" to mean the same thing (at least roughly) as is meant by the statute's use of the term "intoxication". We also believe that Dr. George's testimony is quite clear to the effect that, with the .160 blood alcohol level Mr. Johnson had at the time of his fall, he necessarily would have suffered adverse effects in terms of his reaction time, coordination and judgment, etc. that would have contributed to his accident. Thus, regardless of whether "intoxication" and "impairment" are precisely the same thing, the blood test result plus Dr. George's testimony is sufficient to show that the statutory elements for disqualification for benefits are present in this case.
Mr. Johnson's fifth argument on appeal is that the insurer was arbitrary and capricious in denying benefits or, alternatively, that the insurer was arbitrary and capricious in denying benefits prior to the time of Dr. George's deposition. Obviously, as we have held above that the WCJ was not clearly wrong/manifestly erroneous in holding Mr. Johnson not entitled to benefits, we do not find the insurer to be arbitrary and capricious in denying benefits. Also, as we discussed above in response to Mr. Johnson's third argument, the insurer did have grounds, based upon the hospital records, to deny benefits even prior to Dr. George's deposition.
Mr. Johnson's last argument on appeal is that the defendants, should be subjected to La. C.C.P. art. 863 sanctions for having raised fraud as a defense to Mr. Johnson's claim. Specifically, just prior to trial, the defendants amended their answer to plead fraud as a defense. They based the fraud defense upon Mr. Johnson's deposition testimony. Specifically, they argued that, in view of the alcohol and cocaine test results, as interpreted by Dr. George, Mr. Johnson necessarily lied in his deposition when he testified that he had not consumed alcohol the day of his accident and had not used cocaine for at least two months prior to the accident. Although the fraud issue was never determined, because the case was decided upon the intoxication issue, it had reasonable factual and legal bases and was not frivolous. Sanctions are not at all appropriate.
For the foregoing reasons, the judgment below is affirmed.
AFFIRMED.
NOTES
[1] There also are provisions in La. R.S. 23:1081 as to presumptions of intoxication with respect to use of controlled substances such as cocaine. But, because the hospital's test for the presence of cocaine did not quantify the cocaine usage, because Dr. George could only testify that Mr. Johnson had used cocaine no more than 72 hours before the accident, and because the evidence of alcohol usage was sufficient to support the WCJ's judgment, we will confine our analysis to Mr. Johnson's alcohol usage.