815 So.2d 259 (2002)
Myles T. BERNARD, Jr.
v.
COX COMMUNICATIONS, INC.
No. 01-CA-1321.
Court of Appeal of Louisiana, Fifth Circuit.
March 26, 2002.
Writ Denied June 14, 2002.
*261 Richard B. Eason II, Stefini Weckwerth Salles, Adams and Reese, L.L.P., New Orleans, LA, Counsel for Cox Communications, Inc., Defendant-Appellant.
Susan H. Neathamer, Ray J. Dupepe, Jr., Gretna, LA, Counsel for Myles T. Bernard, Plaintiff-Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
Cox Communications, Inc. appeals a judgment of the Office of Workers' Compensation that awarded the plaintiff, a Cox employee, supplemental earnings benefits and all medical expenses. We affirm.
On October 25, 1999 Myles Bernard filed a Disputed Claim for Compensation with the Office of Workers' Compensation (OWC), seeking supplemental earnings benefits (SEBs) from his employer, Cox Communications. The narrative portion of the claim form stated:
In late June, 1998, employee slipped from the second step of a ladder while working.... Employee hit the first step of the ladder with his foot and then slammed his heel to the ground. He immediately felt a sharp pain to his leg and calf and numbness to the bottom of his foot. Mr. Bernard timely notified *262 his supervisor of this injury. Although Mr. Bernard was experience [sic] continuing pain, he continued to work. Approximately five (5) weeks later, on August 1, 1998, Mr. Bernard went to work in a high level of pain. When he attempted to lift a ladder from the back of his vehicle, he experienced severe pain in his back and leg.... Mr. Bernard suffered a ruptured disc as a result of this injury.
In answer, Cox denied that Bernard had sustained any injury while employed at Cox prior to July 31, 1998, alleged that plaintiff was intoxicated under the influence of marijuana on the date of the alleged injury, and asserted that the intoxication barred his recovery. Alternatively, Cox argued that if plaintiff were able to establish he was injured prior to July 31, 1998, the drug-test result establishing intoxication under the influence of marijuana on that date establishes that he was intoxicated at the time of any accident prior to that date. Further, Cox contended that plaintiff did not report any earlier accident and, therefore, that defendant was denied the opportunity to drug-test him. Cox sought recovery of any past and future benefits paid to plaintiff, including medical expenses, wage losses, attorney's fees, and costs.
After trial on June 27-28, 2001, the OWC judge rendered judgment on August 16, 2001. The court found that Bernard was injured by accident during the course and scope of his employment on June 26, 1998 and aggravated the original injury on July 31, 1998; that Bernard had successfully rebutted the presumption of intoxication at the time he aggravated the original injury on July 31, 1998; that there was no presumption of intoxication on June 26, 1998; and that Bernard had established a connexity between his condition and the accidents. The court held Bernard entitled to supplemental earnings benefits in the amount of $16,406.10 and to payment of all medical expenses and medication expenses. Finally, the court found that Cox had not been arbitrary and capricious, implicitly denying Bernard's claims for penalties and attorney's fees.
On appeal Cox contends the trial court's decision that plaintiff was injured in the course and scope of his employment is erroneous and should be reversed because there is no independent evidence to support any of plaintiffs alleged injuries. Cox asserts the trial court erred in finding that plaintiff was injured in the course and scope of his employment on June 26, 1998 and that he aggravated the original injury on July 31, 1998; in finding that plaintiff rebutted the presumption that he was intoxicated at the time he allegedly aggravated the original injury on July 31, 1998, and that there was no presumption of intoxication at the time of the alleged June 26, 1998 accident; in finding that plaintiff established connexity between his condition and the alleged accidents; in finding that plaintiff did not commit fraud; in admitting into evidence the ledger that plaintiff introduced as Exhibit P-5; and in awarding plaintiff workers' compensation benefits.
At trial the parties stipulated that Myles Bernard was employed at Cox Cable in the summer of 1998 and that the amount of SEBs at issue was $16,406.10. With respect to the drug test performed on plaintiff, the parties stipulated to the chain of custody within the lab that performed the work and to the lab analysis performed on the sample, as well as to the fact that the result was positive for marijuana at 69 nanograms per milliliter. Finally, they stipulated to an audiotape of a statement given by plaintiff to an insurance investigator.
*263 Myles Bernard testified that on or about June 26, 1998 when he was coming off a ladder after performing a cable installation, his foot twisted when he got to the second step. Then his foot hit the next step hard and twisted over, so that his heel hit the ground. He felt a sharp muscle pull in the back of his calf and a little pain; he did not fall. The incident occurred in the middle of the day; he continued his job duties for the rest of the day. He did not report the slip on the ladder because it did not seem serious to him at the time.
Plaintiff said that over the course of the next month he experienced increasing pain in the back of his leg, going from the calf to the back of the knee and up the thigh into the buttocks. Although he continued working, by the third week he could not perform his job well. Plaintiff said he told his supervisor about his injury on July 15, 1998, the day of an employee meeting. The next day he went to Dr. Jones due to the conversation he had with his supervisor, Paul Schmollinger.
Plaintiff recalled that he reported his June 26 accident to Schmollinger while Schmollinger was seated at a desk. Another employee, Michael Dede was nearby talking to Schmollinger. Plaintiff walked up to Schmollinger and told him about how he had hurt himself slipping off the ladder. Schmollinger did not file an incident report at that time. Plaintiff remembered that Schmollinger told him later that it sounded like he had arthritis and he should see his own doctor first. Plaintiff said that Ray Fontenot, another employee, also heard him report his injury to Schmollinger.
Plaintiff's testimony on this point was supported by the testimony of both Fontenot and Dede, who both recalled overhearing plaintiff talking to Schmollinger about being injured, although they could not recall the dates of those conversations. Further, Fontenot, Dede and plaintiff's co-worker Paul Coari all remembered seeing plaintiff limping.
The medical testimony of the various physicians and health care providers who examined and/or treated plaintiff agreed that his symptoms were typical of a herniated lumbar disc pressing on a nerve root. None of them indicated they felt he was exaggerating his symptoms.
Plaintiff's supervisor, Paul Schmollinger, denied that plaintiff ever told him anything about being injured prior to July 31, 1998. Schmollinger stated it was company policy that any injury, however slight, was to be reported. It was his job, as supervisor, to make sure any injuries were reported to Human Resources so that appropriate treatment and other actions could be taken. He stated that the first he knew of any injury was when plaintiff telephoned him on July 31, 1998, and that he immediately told plaintiff to report the claim to Human Resources. Schmollinger denied that he ever saw plaintiff limping prior to that day.

1. Whether plaintiff carried his burden of proving he was injured in the course and scope of employment on June 26, 1998 and aggravated the original injury on July 31, 1998
Defendant argues that plaintiff was not injured during the course and scope of his employment, because he made numerous conflicting statements about the dates of his alleged injuries. Defendant asserts, first, that plaintiff sought medical treatment in July 1998, but did not inform the health care providers that he was injured while working at Cox on June 26, 1998.
Specifically, defendant points to the testimony of Dr. Shaunda Jones, an internal medicine physician whom plaintiff saw on July 16, 1998, as well as of Dr. Geoffrey *264 Smith, an emergency physician, and Clarence Jones, a triage nurse, who saw plaintiff at the West Jefferson Medical Center emergency room on July 24, 1998. The medical information written down by Dr. Jones, Dr. Smith and Nurse Jones on those occasions indicates that plaintiff denied that his back pain was the result of any trauma. Defendant contends this indicates that plaintiff's testimony is not credible.
Defendant next asserts that plaintiff failed to report his alleged injury of June 26, 1998 to anyone at Cox when it occurred and that plaintiff impeached himself on the question of when the accident occurred and when he reported it to anyone at Cox. Defendant points to an audiotaped statement taken by an investigator for the worker's compensation insurer, in which he reported his work-related accident on July 31, 1998 and he indicated that the accident took place five weeks earlier. At trial, he testified he was injured on June 26, 1998 and that he reported the accident to his supervisor, Schmollinger, on July 15, 1998. In addition, defendant asserts that none of plaintiff's witnesseshis wife and two former co-workerscould recall a specific date when his injury occurred. The most any of them could say was that it was sometime during the summer of 1998.
Defendant asserts further that plaintiff failed to report a second accident. Defendant points to the brief histories plaintiff gave various medical personnel on July 31, 1998, the day of the alleged second accident, and an insurance investigator on August 5, 1998, in which he mentioned only being injured on June 26, 1998 or several weeks earlier, without mentioning any injury occurring on July 31, 1998. In contrast, he mentioned July 31 to another doctor, and August 1 to the occupational therapist. In addition, defendant relies on its own computer-generated time reports, asserting these establish plaintiff did not work on July 31, 1998.
[T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence.... A worker's testimony alone may be sufficient to discharge the burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident.... Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends.... Corroboration may also be provided by medical evidence. [Citations omitted.]
Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La.1992), quoted in Williams v. Louisiana Coca-Cola Co., 94-810 (La.App. 5 Cir. 3/1/95), 652 So.2d 108, 112, writ denied, 95-797 (La.5/12/95), 654 So.2d 349. "The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." Bruno, 593 So.2d at 361; Williams, 652 So.2d at 112.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.... Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's *265 story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.... But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).
Applying those guidelines to this case, we are unable to find that the trial court was manifestly erroneous or clearly wrong because the judge's ruling was based on credibility determinations of plaintiff and his witnesses.

2. Whether plaintiff's failure to notify defendant of his initial injury within 30 days caused prejudice to defendant
Defendant next asserts that, if plaintiff first sustained injury on June 26, 1998, then his failure to report the incident within 30 days caused prejudice to defendant.
Here, as in the preceding issue, the ruling turned on credibility determinations. Plaintiff testified he spoke to his supervisor about his pain and initial injury on July 15, 1998; his supervisor denied that any conversation about injury took place prior to July 31, 1998. Plaintiff's testimony was supported by that of co-workers who remembered overhearing him speaking to Schmollinger about being in pain. Although the co-workers could not remember the date or dates on which they overheard conversations between plaintiff and Schmollinger, the weight of their testimony is that such conversations would have taken place at a weekly staff meeting, which were always held on Wednesday. July 15, 1998, the date plaintiff claims he first notified Schmollinger he was injured, was a Wednesday. That date also is within the 30-day time period.
This matter is within the authority of the trial judge to make credibility determinations and we find no manifest error. See Rosell, 549 So.2d at 844-45.

3. Whether plaintiff rebutted the presumption that he was intoxicated on either June 26, 1998 or July 31, 1998
La.R.S. 23:1081 establishes the defenses to workers' compensation claims, including intoxication. It provides that no compensation shall be allowed for an injury caused by the injured employee's intoxication at the time of the injury, La.R.S. 23:1081(1)(b); that the employer has the burden of proving the intoxication, La.R.S. 23:1081(2); and that evidence of either on or off-the-job use of a nonprescribed controlled dangerous substance creates a presumption that the employee was intoxicated, La.R.S. 23:1081(5).
However, those provisions do not limit the employee's right to introduce any other competent evidence bearing upon the question of whether the employee was under the influence of any illegal or controlled substance. La.R.S. 23:1081(6). To support a finding of intoxication due to drug use and a presumption of causation arising from such intoxication, the employer need prove use of the controlled substance by only a preponderance of the evidence. La.R.S. 23:1081(8). In addition, test results which indicate that the concentration of total urinary cannabinoids equals or exceeds fifty nanograms/ml shall exclude the possibility of passive inhalation. Further,
Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the *266 time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.
La.R.S. 23:1081(12).
The trial court held that the plaintiff had successfully rebutted the presumption of intoxication on July 31, 1998, and that there was no presumption of intoxication applicable to June 26, 1998.
Defendant argues that the drug test's positive results established the presumption of intoxication and that plaintiff failed to present any evidence other than his own self-serving testimony that he was not intoxicated at the time of his alleged work-related accidents. Defendant contends plaintiff's statements denying his drug use were clearly fraudulent, in light of the uncontested results of the drug test.
The testimony of the toxicology experts, both plaintiff and defense, was that the level of cannabinoids shown by drug test69 nanograms per milliliterwas enough to indicate active use of marijuana, anywhere from within a week to a month prior to the test, but both experts also agreed that it is impossible to determine from that level whether plaintiff was intoxicated or under the influence of the substance at the time.
This issue turns, as does the entire case, on the credibility determinations of the trial judge. Plaintiff testified he was not intoxicated; no witness, either plaintiff or defense, testified that he had been seen to be or appeared to be intoxicated by or under the influence of marijuana at any time during his employment with Cox. The judge obviously found the plaintiff and his witnesses credible. We find no manifest error and, therefore, no basis to overturn that ruling. See Rosell, 549 So.2d at 844-45.

4. Whether plaintiff committed fraud when he denied using marijuana during his employment with Cox and when he made inconsistent statements concerning the date and the facts surrounding his accident
Given our determination, above, that the trial court did not err in ruling that plaintiff had rebutted the presumption of intoxication, we find no merit to this issue. Plaintiff did not dispute the result of the drug test, although he tried to establish doubt as to whether the urine tested was actually his sample, due to a non-fatal error in the chain of custody documentation. (The laboratory employee who took the sample failed to date several places on the document, although she did date it in other places.)
The seminal question, however, is not so much whether plaintiff tested positive for marijuana use, but whether the presence of the drug caused him to be intoxicated and, if not, whether he successfully rebutted the presumption of intoxication and causation arising from the test result. As discussed above, we find no manifest error in the trial court's determination that plaintiff successfully rebutted the presumption.

5. Whether the trial court abused its discretion in admitting plaintiff's ledger as rebuttal evidence
The trial court admitted into evidence a ledger plaintiff introduced in rebuttal after the defense rested its case. The ledger was a day-to-day listing of sales and installation calls plaintiff made in the course of his job duties. Plaintiff used the ledger to establish that despite the *267 computerized time reports introduced by defendant, he had worked on July 15, 1998. He explained discrepancies between the computer-generated time reports and his ledger by noting that although employees were supposed to "swipe in" with their identification card every day, he did not always do so and that sometimes he swiped in, but the computer did not record it. In addition, he noted that on days when he made no sales he did not make entries in his ledger.
Defendant objected to admission of the ledger on the ground that plaintiff had failed to list it in pretrial statements, and defendant had no chance to review it for veracity. Further, defendant argued that plaintiff was using the ledger not for rebuttal, but for repetition of the evidence presented in his case-in-chief.
The trial court has great discretion in controlling the conduct of trial and the presentation of evidence, which includes the power to admit or refuse rebuttal evidence. White v. McCoy, 552 So.2d 649, 658 (La.App. 2 Cir.1989); La. C.C.P. arts. 1631, 1632. However, rebuttal evidence must be confined to new matters adduced by defense and not to repetition of plaintiff's theory of the case. Bordelon v. Drake, 578 So.2d 1174, 1178 (La.App. 5 Cir.1991).
We find no error in the court's admission of the ledger, because the ledger was directed to the defense's introduction of Cox's computerized time reports regarding whether plaintiff worked on certain days he claimed to have worked. Plaintiff was entitled to rebut that evidence and we do not find that the use of the ledger went beyond rebuttal.
Further, even if the ledger were considered inadmissible, we find its admission would be harmless error, because plaintiff's own testimony regarding dates he worked and when he approached Schmollinger to tell him of his injuries was supported by the general recollection of his co-workers Dede and Fontenot, who remembered overhearing plaintiff tell Schmollinger of his injuries.
Plaintiff's testimony regarding swiping in was supported by the testimony of his co-worker Paul Coari, who said that employees omitting to swipe in was a big problem and that Schmollinger complained to them frequently. Coari also said there were times the computer did not register the swipes because the system was down. He also said that employees were not penalized for failing to swipe in.
Accordingly, we find no merit to this assignment.

6. Whether plaintiff is entitled to workers' compensation benefits
Defendant's arguments on this point simply reiterate the arguments on the prior issues. Defendant asserts plaintiff was not entitled to benefits because there was a "lack of support" for his allegations that he suffered a work-related accident, his reporting of the alleged accident was untimely, his drug test was positive, and he stated that he had not used marijuana despite the positive result of his drug test.
As discussed above, decision of the issues in this case turned on the credibility determinations of the trial judge, which we find are not manifestly erroneous. Rosell, 549 So.2d at 844-45. There is no merit to this assignment.

PENALTIES AND ATTORNEY'S FEES
In his brief on appeal, plaintiff asserts that the trial court erred in failing to find that Cox's failure to properly calculate and pay supplemental earnings benefits to plaintiff was arbitrary and capricious *268 and in declining to award attorney's fees to plaintiff as required by La.R.S. 23:1201, et seq. However, because plaintiff neither cross-appealed nor answered defendant's appeal, we cannot consider his assignment of error. See La.C.C.P. arts. 2082, 2133. We can grant him no additional relief beyond that which he received in the trial court.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.