869 So.2d 216 (2004)
Shane FORRESTER
v.
NEW ORLEANS IRON WORKS.
No. 03-CA-1194.
Court of Appeal of Louisiana, Fifth Circuit.
February 23, 2004.
*217 M. Elizabeth Bowman, Gretna, LA, for Plaintiff/Appellee.
Robert J. May, Metairie, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
Shane Forrester (Forrester) was injured in the course and scope of his employment with New Orleans Iron Works while installing metal flashing on a fan house atop a building at the Lockheed Martin facility. While working on the roof of the building, Forrester fell off, sustaining injuries. He was treated at Charity Hospital in New Orleans, where a urinalysis tested positive for the presence of marijuana in his system. After he filed a claim for benefits, New Orleans Iron Works denied his claim, raising the defense of intoxication. The trial court found that Forrester rebutted the presumption of intoxication at the time of the accident, specifically finding that Forrester was a credible witness.
New Orleans Iron Works appeals this finding, arguing that the trial court erred as a matter of law by not applying the presumption of intoxication or applying it incorrectly. They argue that the trial court erred by placing the burden of proof on appellants to show that Forrester was intoxicated, rather than requiring Forrester *218 to show that he was not intoxicated. They argue that Forrester did not rebut the presumption of intoxication, because his movements within the hour before the accident are unaccounted for, and he could have smoked pot in the hour before the accident. They also argue that this is the type of accident that could not have happened if Forrester were not intoxicated.
After thorough review of the record and evidence, we find that the trial court correctly applied the presumption of intoxication, and further, the trial court's finding that Forrester successfully rebutted the presumption, is not manifestly erroneous. Accordingly, we affirm the judgment.

ANALYSIS
Under LSA-R.S. 23:1081(1)(b), an employee is not entitled to workers' compensation benefits for an injury caused by the employee's intoxication.[1] The employee is presumed to be intoxicated if there was, at the time of the employee's accident, evidence of either on-the-job or off-the-job use of a non-prescribed controlled substance. LSA-R.S. 23:1081(5).[2] Once the employer shows that the employee was intoxicated at the time of a job accident, the intoxication is presumed to have caused the accident. LSA-R.S. 23:1081(12).[3] The employee then has the burden of proving that the intoxication was not a contributing cause of the accident. Id.
Thus, the statute leads to two rebuttable presumptions: first, that a positive drug test establishes the presumption of intoxication, and second, that intoxication was presumed to have caused the accident.
The burden rests with the party challenging the rebuttable presumption to convince the fact-finder that his proposed conclusion is more correct than the presumed one; a presumption does not have any probative value, but merely provides the fact-finder with a conclusion in the absence of proof to the contrary. Whiting v. Aadvance Insulation Services, 98-1238 (La.App. 5 Cir. 6/1/99), 738 So.2d 685.
In determining whether a workers' compensation claimant discharged his burden of proving that intoxication was not a contributing cause of the accident in order to defeat the employer's intoxication defense, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. Id.
A trial judge's findings of fact, including evaluations of credibility of the witnesses, are reviewed on appeal under the clearly wrong/manifest error standard, *219 and may not be disturbed on appeal so long as they are reasonable.
As this court stated in Bernard v. Cox Communications, Inc., 01-1321 (La.App. 5 Cir. 3/26/02), 815 So.2d 259, the seminal question is not so much whether the plaintiff tested positive for marijuana use, but whether the presence of the drug caused him to be intoxicated and, if not, whether he successfully rebutted the presumptions of intoxication and causation arising from the test result.
In this case, the proof of intoxication was a urinalysis performed when Forrester was admitted to Charity Hospital that was positive for the presence of marijuana in Forrester's system. Dr. Francis Ragan, Jr., an expert toxicologist with The Medical Center of Louisiana, Charity Hospital, testified in a deposition regarding Forrester's urinalysis and the testing procedures employed by the hospital. He stated that a urinalysis can be positive for marijuana use up to 30 days after actual usage. He testified that Forrester's urinalysis showed the presence of cannabinoids in his system, but the test was not quantitative, i.e., not useful for showing how much drug was in Forrester's system. The standard test performed at the hospital was not useful for showing whether an individual was impaired, he said, but only that he had used marijuana in the past 30 days. The positive test result, Dr. Ragan testified, did not indicate when a person used marijuana or how much.
Forrester testified that he was employed by New Orleans Iron Works at the time of his accident and that he had been on this job at the Lockheed Martin facility for around 12 days. Forrester established that he was working an 8 hour shift up on a flat roof 30 feet above the ground. The accident occurred when Forrester had one hour left on his shift. He typically worked from 6:00 p.m. until around 4:00 a.m., but on this particular night, the NASA supervisor, David Wells (Wells), wanted Forrester and his co-worker, David Snyder (Snyder), to finish early, around midnight, because Wells needed to leave at that time. Forrester and Snyder both testified that they were making every effort to be done at that time, but that they informed Wells the work would not quite be done at midnight, and that Wells had approved.
Forrester testified that he arrived at the site around 5:15 p.m. and waited for his co-worker Snyder, who was also his supervisor, to arrive. Brent Bufford (Brent), the owner of New Orleans Iron Works, came by for a short time that night to check on them. Forrester also said that another co-worker, Jessica, was there early in the shift to act as a fire watch for some welding, but that she was done early and left thereafter. Forrester parked his truck next to the building where he was working, about 20 feet from the ladder they used to gain access to the roof of the building.
Forrester testified that he worked on the roof, which was approximately 30 feet high. The only time he came down was for lunch or a bathroom break. The building's dimensions were approximately 60 feet by 30 feet. Six fan houses were located on the roof. These fan houses were an additional 15 to 18 feet high and housed large fans and equipment. On the day of the accident, Forrester and Snyder were installing metal flashing on Fan House # 6.
Forrester testified that the roof was illuminated by two large floodlights belonging to the roofer. He said they illuminated their immediate workspace and the area near the ladder, but did not shine all the way to the edge of the roof, which was in darkness.
*220 Forrester testified on that particular day, he and Snyder had taken 2 breaks; one while Brent went to get materials, and one around 11 pm, when they each ate something and sat on Snyder's tailgate and smoked some cigarettes. Forrester testified that he took no other breaks that shift. Snyder testified he could not remember what breaks Forrester took that night other than the one where they ate together. Forrester also stated that it was his practice to inform Snyder if he was going to take a bathroom break, because he didn't want Snyder having to look for him while he was gone.
Forrester stated that the accident occurred as he was trying to straighten out a 200 foot extension cord. He and Snyder had finished installing the flashing and were working separately at different tasks, and had been for about an hour. As he straightened the cord, he walked backwards towards the roof's edge. Forrester testified that he knew the edge of the roof was coming up. As he turned to look for the edge, he stepped off at the same moment. He testified that he pushed off the roof with his other foot in an attempt to land on his feet rather than on his back or neck. He landed in gravel, twisted to his right side, and fell.
Forrester said that safety harnesses were never mentioned or used. Snyder testified that harnesses were used when work took place near the edge of the roof. They were not used on that night because the work on Fan House # 6 took place away from the edge.
Installing the flashing was a two person job, Forrester testified, one of them inside the fan house and one outside. Though they could not always see each other because of the fan house wall, they were in constant verbal contact and could see each other's hands as they installed the flashing together. At the time of the accident, Forrester and Snyder had not been working together for approximately the last hour. After they finished installing the flashing together, Snyder was applying tar inside the corners of the fan house, while Forrester was going behind him, putting in screws. This work took them out of sight and hearing of each other. Snyder testified that during the last hour to hour and a half, he had no direct contact with Forrester and could not hear his activities, due to the loudness of the machinery on the roof.
The accident occurred on a Monday night. Forrester admitted to having smoked marijuana on the Saturday night before the accident, at the wedding of one of his friends. He explained that he had not smoked pot for around four months before this incident, and that he did not smoke on Sunday or on the day of the accident. He denied being under the influence of the drug at work. On cross examination, he admitted telling Brent, after the accident when Brent offered to move his truck from the job, that he had a pipe in his truck that he had used to smoke marijuana in the past, but that he explained at trial that he had not used that pipe in several months. The pipe itself was never tested and was not entered into evidence. Forrester said that he did not use marijuana daily, but only "every now and then."
David Snyder, an employee of New Orleans Iron Works and Forrester's co-worker and supervisor on that shift, corroborated Forrester's description of the work they performed that evening and the fact that they worked together most of the evening until about the last hour or so. When asked if he felt that Forrester was impaired that night, he replied that "Shane was Shane to me." He explained that he did not have much eye-to-eye contact with him to tell if he was intoxicated, but he testified that Forrester performed his *221 job well that night and did not recall him performing his tasks incorrectly. He felt that Forrester did not appear to be any different than any other time he'd worked with him. If Forrester was under the influence of something, Snyder said he was not aware of it. He was never worried about working with Forrester, that night or any night, he testified. Snyder testified that Forrester had had no accidents, or even near misses, up to that point on this job. He testified that he didn't watch over Forrester because Forrester was doing his job. He said he wouldn't have much use for an employee who needed to be watched in order to perform his work. His overall characterization of Forrester was of a responsible employee who knew how to perform his job and did so reliably.
On cross examination, Snyder said that he was unaware if Forrester ever left the roof during that last hour or so before the accident. He agreed that Forrester could have left the roof that last hour without Snyder being aware of it. Snyder was not aware when Forrester fell off the roof, until security called him to ask if they had a man down.
Snyder didn't recollect that Wells told them to hurry, only that he wanted to be finished early that evening. Snyder said that he was very safety conscious and would not rush a job and risk injury to himself or a co-worker. Snyder stated that there were two flood lights on the roof. One was aimed at the fan house and the other aimed off towards the edge of the roof in direction of the ladder. He testified that the ground lighting lit up the ladder fairly well. Snyder testified that Brent was present early on to check on them, but left early with Jessica.
Jessica Landry testified that she was an employee of New Orleans Iron Works and that she had been on site briefly that night. She denied having performed fire watch duties that night, as Forrester testified, and said she left early because she was not needed. She remembered seeing Forrester briefly that night, but didn't converse with him enough to have an opinion whether he was impaired or under the influenced of something.
Brent Bufford, the owner of New Orleans Iron Works, testified that he, too, was on site briefly that night, but did not converse with Forrester enough to form an opinion on his possible impairment. He did state that Forrester had never been reprimanded for being intoxicated at work. He said that New Orleans Iron Works had a drug test policy, but that Forrester had never been tested.
Following the close of testimony, the trial court ruled from the bench that Forrester was a credible witness, and he found that Forrester was not intoxicated at the time of the accident.
Appellant first argues that the trial court erred in either failing to apply the presumption of intoxication or implying it incorrectly. Appellant argues that the trial court appears to have required New Orleans Iron Works to prove that Forrester was intoxicated, rather than have Forrester prove he was not intoxicated or that his intoxication did not cause the accident.
After reviewing the record as a whole, we cannot say that the trial court erred in its application of R.S. 23:1081's presumption. There is simply no indication that the trial court required defendant to prove Forrester was intoxicated. At the close of testimony, the trial court stated:
It's the ruling of the Court that Mr. Forrester is a credible witness and I do not find Mr. Forrester to have been intoxicated on the night of the accident.
We find that the trial court correctly applied the presumption, and required Mr. Forrester to rebut the presumption of intoxication *222 supplied by the positive drug test. There is simply no indication that the trial court required defendant to prove that Forrester was not intoxicated.
Appellant argues that the trial court erred in accepting Forrester's uncorroborated, self serving testimony that he smoked marijuana two days before the accident, but not on the day of the accident. Appellant claims that in the hour before the accident, when he and Mr. Snyder were working separately, no one observed Forrester's movements, and Forrester could have gone down off the roof, to his truck parked nearby, smoked marijuana, where he admitted the presence of a marijuana pipe. Appellant contends that Forrester did not produce any witnesses who had seen him shortly before the accident who could corroborate his claim that he had not smoked marijuana shortly before the accident. Appellant cites two cases, Johnson v. Abraham Payton Roofing and Company, 99-1967 (La.App. 4 Cir. 4/5/00), 761 So.2d 30, and Johnson v. EnviroBlast, 01-0200 (La.App. 1 Cir. 12/28/01), 804 So.2d 924, for the proposition that co-employee testimony about the claimant's demeanor and possible intoxication is insufficient to rebut the presumption when the testifying co-employee did not see the accident and/or see the employee immediately before the accident.
Those cases can be distinguished from the instant case. In both cases, circumstances cast suspicion on the reliability of the claimant's testimony. First, in Johnson v. Abraham Payton Roofing and Company, the claimant's credibility was seriously undermined when he denied using alcohol on the day of or cocaine within 72 hours of the accident. Though Mr. Johnson denied using alcohol or cocaine in temporal proximity of the accident, he did describe his long-term, daily very heavy drinking and occasional use of crack cocaine. An expert toxicologist testified that someone with Mr. Johnson's blood alcohol levels had to have used alcohol shortly before the accident, and would show substantial impairment, and the cocaine metabolites in his blood indicated usage within the last 72 hours. Moreover, Mr. Johnson relied on a co-worker witness, a Mr. Payton, who testified that Mr. Johnson did not seem impaired that day, but admitted that there were times he (Payton) left on errands and Mr. Johnson was alone. The court found that Mr. Payton's testimony was not enough to overcome the very convincing evidence of intoxication supplied by the alcohol test levels and the toxicologist, in part because he was not at the job site for substantial periods of time in order to observe Mr. Johnson.
In EnviroBlast, the judge found that the claimant failed to rebut the presumption that he was intoxicated, after a drug test was positive for the presence of cocaine. Johnson denied cocaine use on the specific day of the accident, but admitted to off-the-job usage of cocaine on other work days on a weekly basis and admitted to using cocaine two and a half days before the accident. The trial judge specifically found that he had a "problem" with drugs, as evidenced by two positive drug tests.[4] The court of appeal found that in light of the claimant's testimony regarding the frequency of his drug use, the trial court was justified in discounting the claimant's self serving testimony that he did not use drugs in the immediate two days before the accident. Co-workers testified that *223 Johnson seemed normal to them that day, but this testimony was found insufficient to rebut the presumption that intoxication was a contributing cause of the accident in light of the positive drug test and the fact that the witnesses had not seen Johnson for around an hour before the accident.
Forrester, on the other hand, was found to be a credible witness. We note that his admission of marijuana use two days before the accident was corroborated by his positive drug test, unlike in Mr. Johnson's case, who denied alcohol or cocaine usage in the face of positive tests that showed very recent usage. Second, Dr. Ragan, in this case, could not say, based upon Forrester's drug test, that he was or would have been impaired at the time of the accident, but that the test showed only that Forrester had used marijuana in the past 30 days or so. In Johnson, the toxicologist testified that the high serum alcohol levels alone would have caused Mr. Johnson to show serious impairment at the time of the accident. In Johnson, the only evidence presented to rebut the presumption of intoxication was the claimant's testimony, who was specifically found not credible, and a co-worker's, whose testimony was found inadequate rebut the presumption based upon the fact that he was absent much of the day.
Forrester's co-worker witnesses characterized him as a responsible employee who performed his job well, did not need to be watched over to perform his job, and who had never been reprimanded for being intoxicated on the job. Snyder testified that Forrester had no previous accidents or even near-misses. Based upon Forrester's demeanor and performance that night, Snyder had no reason to believe that he was impaired or under the influence of a drug. In all material aspects, Snyder's testimony corroborated Forrester's.
The fact that Snyder did not observe Forrester in the hour immediately preceding the accident does not discredit Forrester's testimony. The defendant posits the theory that Forrester, since he was unobserved, might have left the roof, smoked pot, and returned to the roof. This theory, which is unsupported by any evidence, is mere speculation. It is not consistent with the testimony of witnesses who established that Forrester was a responsible, reliable worker, nor does it seem likely since Forrester and Snyder were working to finish early to accommodate the NASA supervisor.
We also find that this accident is not the type that is explained solely by intoxication. This accident took place on top of a 30 foot roof around midnight. Only parts of the roof were illuminated fully. The area where Forrester fell was not fully illuminated. Forrester testified that he was aware that he was approaching the edge of the roof, and actually turned to look for it as he stepped off. He testified he was able to push off the roof with his other foot in an attempt to land on his feet. Forrester, though always aware of the edge of the roof, simply misjudged his distance to the edge, which, given all of the conditions, is not the type of occurrence explained only by intoxication. This accident is easily explained by ordinary negligence, which is not a bar to recovery. Sweeden v. Hunting Tubular Threading, Inc., 01-724 (La.App. 5 Cir. 12/12/01), 806 So.2d 728.
Accordingly, we find no error in the trial court's ruling. We find that the trial court correctly applied the presumptions found in LSA-R.S. 23:1081. We further find no manifest error in the trial court's finding that Forrester was a credible witness and that he successfully rebutted the presumption *224 that he was intoxicated at the time of this accident.
AFFIRMED.
NOTES
[1] No compensation shall be allowed for an injury caused:* * *

(b) by the injured employee's intoxication at the time of the injury, unless the employee's intoxication resulted from activities which were in pursuit of the employer's interests or in which the employer procured the intoxicating beverage or substance and encouraged its use during the employee's work hours. LSA-R.S. 23:1081(1)(b).
[2] "If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. § 812, Schedules I, II, III, IV, and V, it shall be presumed that the employee was intoxicated." LSA-R.S. 23:1081(5).
[3] "Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer."
[4] The second drug test was performed seven days after the accident and was positive for cocaine. Though it was not relevant for the presumption of intoxication at the time of the accident, the court clearly found it relevant for purposes of the claimant's credibility regarding his drug usage.