# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-605


**TERRY L. DEROUEN**

**VERSUS**

**IBERIA SUGAR CO-OPERATIVE, INC.**


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 9,
PARISH OF IBERIA, NO. 03-6371,
ELIZABETH C. LANIER, WORKERS' COMPENSATION JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.


**AFFIRMED.**

R. Michael Moity, Jr.
The Moity Law Firm
114 West Washington Street
New Iberia, Louisiana  70560
Counsel for Plaintiff/Appellee:
    Terry L. Derouen

Edward P. Landry
Landry, Watkins, Repaske & Breaux
Post Office Drawer 12040
New Iberia, Louisiana  70560-2040
Counsel for Defendant/Appellant:
    Iberia Sugar Co-operative

SULLIVAN, Judge.

Iberia Sugar Co-operative, Inc. (Iberia) appeals a judgment in favor of Terry Lee Derouen, in which the workers' compensation judge (WCJ) (1) rejected its defenses of intoxication and fraud; (2) awarded Mr. Derouen disability benefits and medical expenses; and (3) assessed Iberia with penalties of $500.00 and attorney fees of $2,000.00. For the following reasons, we affirm the judgment of the Office of Workers' Compensation (OWC) in all respects.

## Discussion of the Record

Mr. Derouen filed a disputed claim for compensation alleging that, on March 7, 2003, he sustained third degree burns on his left foot and leg while cleaning the grinding mills at work with water heated by a pressure washer. Iberia denied the claim, raising the defenses of (1) intoxication, based upon the results of a drug test taken three days after the accident that was allegedly positive for cocaine, and (2) fraud, based upon Mr. Derouen's denials of cocaine use.

At trial, Mr. Derouen testified that he was washing down one of the mills when, at approximately 11:00 a.m., he felt a burning sensation on his left leg and foot.[1] After noticing that parts of his slicker suit had melted, he concluded that hot water from the pressure washer must have splashed onto him and seeped through his jeans and boot. He testified that he did not report the incident because he "didn't think anything of it" and that he completed the rest of his shift, leaving at 3:00 p.m., even though his leg and foot were "stinging a little." At home over the following weekend, however, he noticed that the affected area became swollen and painful and started to peel. On Saturday, he began taking Lortab for pain, but by Sunday evening, he

_____

[1] There is some confusion in the record as to whether the accident occurred on a Thursday or a Friday. The judgment of the OWC, however, finds that the accident occurred on March 7, 2003, which the calendar indicates was a Friday.

realized that he could no longer treat the injury himself. At that time, he went to the emergency room at Dauterive Hospital in New Iberia, where he was given various drugs, including morphine for pain relief and IV antibiotics to prevent infection. The next day, he was transferred to the burn unit of Baton Rouge General Hospital, where he underwent surgery for his injuries.

William Klentzman, Iberia's chief engineer, testified that he dropped off a drug collection kit at the hospital on Monday, the first day he was informed of the accident, so that a drug test could be administered before Mr. Derouen was moved to Baton Rouge. Mr. Derouen recalled that an unidentified male came to his hospital room to obtain a drug specimen, but he stated that he was "woozy" from the pain medication and that he needed help placing his initials on the drug collection kit. Mr. Klentzman testified that he was informed the test was positive for cocaine, but he acknowledged that the report did not state the metabolic level of cocaine and it did not indicate whether there was a positive result for Lortab or morphine as well. Mr. Klentzman also testified that Iberia had received copies of subsequent positive drug tests from a drug rehabilitation program that Mr. Derouen participated in, but he could not say whether those tests also included positive results for the pain medication that Mr. Derouen was taking at that time.

The drug screen report that Iberia introduced into the record lists as its only "Result" a notation of "POSITIVE FOR COCAINE." That report does not indicate the level or amount of cocaine allegedly present in Mr. Derouen's system, and it does not contain any information regarding chain of custody of sample taken or the presence of other drugs that were administered during Mr. Derouen's hospital stay. We also note that the report contains the notation, "Internal use only."

2

At trial, Mr. Derouen denied that he used cocaine either before or after the accident. He explained that a physician informed him that he would test positive "for drugs" because of his Lortab use, which continued through November of 2003. He also admitted that he enrolled in a drug rehab program, but he testified that he did so only because Iberia required his participation in the program as a condition to keeping his job. He disputed the results of subsequent drug screens that were allegedly positive, claiming that, despite his repeated requests, no one in the drug treatment program ever showed him a copy of those tests.

After taking the matter under advisement, the WCJ rendered a judgment in favor of Mr. Derouen, stating that Iberia "cannot avail itself of the defenses listed in La.R.S. 23:1081 [intoxication] because it did not meet its burden of proof and did not meet the requirements established in La.R.S. 23:1081" and that Mr. Derouen "did not violate La.R.S. 23:1208 [fraud]."

**Opinion**

*Intoxication*

In its first assignment of error, Iberia argues that the WCJ erred in rejecting its defense of intoxication, given the presumption of intoxication afforded the employer in La.R.S. 23:1081(5) and (12). Mr. Derouen contends that Iberia is not entitled to that presumption because the drug test was not administered "immediately" after the injury. He also argues that the WCJ's conclusion that Iberia did not meet its burden of proof on this issue is supported by the lack of any evidence as to the chain of custody of the drug specimen taken and the incompleteness of the report, in that it failed to indicate the level of cocaine allegedly detected and the presence of pain medications that were indisputably administered before the test was taken.

3

Louisiana Revised Statutes 23:1081(1)(b) provides that no compensation shall be allowed for an injury caused by the injured employee's intoxication at the time of the injury. Section 1081 further provides in part:

(2) In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for any cause or reason set forth in this Subsection, *the burden of proof shall be upon the employer*.

. . . .

(5) If there was, *at the time of the accident*, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, III, IV, and V, *it shall be presumed that the employee was intoxicated*.

. . . .

(7)(a) For purposes of this Section, the employer has the right to administer drug and alcohol testing or demand that the employee submit himself to drug and alcohol testing *immediately after the alleged job accident*.

(b) If the employee *refuses to submit himself* to drug and alcohol testing immediately after the alleged job accident, then it shall be *presumed that the employee was intoxicated at the time of the accident*.

(8) In order to support a finding of intoxication due to drug use, and a presumption of causation due to such intoxication, the employer must prove the employee's use of the controlled substance *only by a preponderance of the evidence*. In meeting this burden, the results of employer-administered tests shall be considered admissible evidence *when those tests are the result of the testing for drug usage done by the employer pursuant to a written and promulgated substance abuse rule or policy established by the employer*.

(9) All sample collection and testing for drugs under this Chapter shall be performed in accordance with rules and regulations adopted by the director which ensure the following:

(a) The collection of samples shall be performed under reasonably sanitary conditions.

(b) Samples shall be collected and tested with due regard to the privacy of the individual being tested, and in a manner reasonably

4

calculated to prevent substitutions or interference with the collection or testing of reliable samples.

(c) Sample collection shall be documented, and the documentation procedures shall include:

(i) Labeling of samples so as reasonably to preclude the probability of erroneous identification of test result; and

(ii) An opportunity for the employee to provide notification of any information which he considers relevant to the test, including identification of currently or recently used prescription or nonprescription drugs, or other relevant medical information.

(d) Sample collection, storage, and transportation to the place of testing shall be performed so as reasonably to preclude the probability of sample contamination or adulteration; and

(e) Sample testing shall conform to scientifically accepted analytical methods and procedures. *Testing shall include verification or confirmation of any positive test result by gas chromatography, gas chromatography-mass spectroscopy, or other comparably reliable analytical method, before the result of any test may be used as a basis for any disqualification pursuant to this Section.* Test results which do not exclude the possibility of passive inhalation of marijuana may not be used as a basis for disqualification under this Chapter. However, test results which indicate that the concentration of total urinary cannabinoids as determined by immunoassay equals or exceeds fifty nanograms/ml shall exclude the possibility of passive inhalation.

. . . .

(12) Notwithstanding any language to the contrary, *once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer.*

(Emphasis added.)

As explained in *Forrester v. New Orleans Iron Works*, 03-1194, p. 3 (La.App. 5 Cir. 2/23/04), 869 So.2d 216, 218: "[T]he statute leads to two rebuttable presumptions: first, that a positive drug test establishes the presumption of intoxication, and second, that intoxication was presumed to have caused the

5

accident." If these presumptions apply, then the employee has the burden of proving that the intoxication was not a contributing cause of the accident. *Id.* However, the court in *Fisher v. Westbank Roofing*, 95-964, p. 7 (La.App. 5 Cir. 2/27/96), 670 So.2d 1328, 1331, *writ denied*, 96-809 (La. 5/10/96), 672 So.2d 926, recognized that "for an employer to take advantage of the statutory presumption of intoxication created by La.R.S. 23:1081, the claimant must be tested for drug use *immediately after* the accident." *See also Reuben v. Tidewater Marine*, 97-527, p. 4 (La.App. 5 Cir. 5/13/98), 712 So.2d 263, 264, *writ denied*, 98-1486 (La. 9/4/98), 721 So.2d 916 (emphasis added), in which the court stated: "The *immediacy of the test* is an essential element for the presumption of intoxication."

In *Fisher*, 670 So.2d 1328, the employer had requested a drug screen to be performed on the day of the accident, but that request was not carried out until six days later. Even though the delay in testing was not attributable to the employer, the court nonetheless found that "the immediacy requirement of R.S. 23:1081(7)(a) had not been met and, therefore, the presumption was not available." *Id.* at 1331. In rejecting the argument that La.R.S. 23:1081(8) allows an employer to test an employee at any time after an accident and to receive the benefit of the presumption of intoxication as long as the test is conducted pursuant to a written and promulgated substance abuse policy, the court stated: "If this Court were to accept the reasoning of the defendants, employers could possibly use the results of drug tests taken weeks or months after an accident to bar a claim. Such an interpretation of the law is illogical and we reject it." *Id.* Although the employer in *Fisher* was not entitled to the benefit of the presumption of intoxication, the untimely drug screen was still

6

admissible as one piece of evidence of intoxication because the employer had a written and promulgated substance abuse policy.

In *Reuben*, 712 So.2d 263, the court applied a similar analysis in the case of an employee who did not report his accident until seven days after it occurred. Concerning the drug screen taken at that time, the court stated:

> Although the employer may not use the test to assert the presumption of intoxication and shift the burden to the claimant to disprove that he was intoxicated at the time of the accident, the results of the drug screening are admissible into evidence and can be used along with other evidence to show the claimant was intoxicated at the time of the accident.

*Id.* at 264.

In the present case, the language in the written judgment indicates that the WCJ did not apply the presumption of intoxication in favor Iberia, so that the burden of proof never shifted to Mr. Derouen to prove that intoxication was not a contributing cause of the accident. We find no error in this analysis, given the facts of this case and the jurisprudence discussed above. We further find no error in the WCJ's conclusion that Iberia failed to prove that Mr. Derouen was intoxicated at the time of the accident. The only evidence to this effect was a drug screen taken three days after the accident. The entire substance of the drug screen report was the notation "POSITIVE FOR COCAINE." Without any indication as to the level of cocaine detected at the time of the test and expert testimony interpreting that information, the report sheds no light on Mr. Derouen's condition at the time of the accident. Additionally, the accuracy of its result is subject to question in that the record does not contain any information on the chain of custody of the sample used and the report does not refer to the other drugs that were administered to Mr. Derouen during his hospital stay.

7

*Fraud*

In its second assignment of error, Iberia argues that Mr. Derouen willfully made false statements for the purpose of obtaining workers' compensation benefits when he denied any cocaine use, given that Mr. Derouen tested positive after this accident, enrolled in a drug treatment program, and tested positive while in the program. Mr. Derouen testified that he only enrolled in the treatment program because Iberia required him to do so and that, despite his repeated requests to see the drug tests administered in the program, the rehab counselors refused to show them to him. He also testified that during his participation in the drug treatment program he was still taking pain medications, including Lortab. He further testified that he successfully completed the program and that he had to pass a drug screen before he could obtain his present employment.

Louisiana Revised Statutes 23:1208 provides in part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *Douglas v. Grey Wolf Drilling Co.*, 03-515, p. 9 (La.App. 3 Cir. 11/5/03), 858 So.2d 830, 836 (citation omitted), we stated that "because statutory forfeiture is a harsh remedy, it must be strictly construed. Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error."

8

Implicit in the WCJ's finding that Mr. Derouen did not violate La.R.S. 23:1208 is a favorable credibility assessment. We decline to disturb that finding on appeal. We note that Mr. Derouen's testimony that he enrolled in the drug treatment program at Iberia's request is supported by the fact that Iberia's address appears on the reports generated by that program and by Mr. Klentzman's testimony that Iberia received copies of those reports. We have already discussed the problems regarding the drug screen taken after the accident. Concerning the records from the treatment program, we note that the counselor's reports are based upon forms that are otherwise typewritten but contain a handwritten notation of "positive for cocaine," suggesting that other documents not present in the file were used to prepare them. We also note an apparent discrepancy in that those records contain what appears to be two copies of the same report, yet only one copy has the "positive for cocaine" notation written on it. On the record before us, we find no error in the WCJ's decision not to order forfeiture of benefits.

*Penalties and Attorney Fees*

In its final assignment of error, Iberia argues that the WCJ erred in imposing penalties and attorney fees, as it reasonably controverted Mr. Derouen's claims. We disagree. Louisiana Revised Statutes 23:1201(F) subjects the employer or insurer to penalties and attorney fees for failure to pay benefits owed, unless the claim is reasonably controverted or if the nonpayment results from conditions beyond the control of the employer or insurer. It is well settled in this circuit that "[t]he decision to award penalties and attorney fees is a factual determination that will not be reversed on appeal absent a finding of manifest error." *Harris v. Christus St. Patrick Hosp.*, 02-1502, p. 12 (La.App. 3 Cir. 10/22/03), 857 So.2d 1278, 1286, *writ denied*,

9

03-3193 (La. 2/13/04), 867 So.2d 697. In the present case, Iberia initially denied the claim based upon the positive drug screen taken after the accident, notwithstanding the time that had elapsed between the accident and the test, and the subsequent drug screens taken in the treatment program. Later, Iberia cited statements in Mr. Derouen's deposition in support of its claim for fraud. However, the subsequent drug screens had no probative value as to Mr. Derouen's condition on the day of the accident, and the statements in Mr. Derouen's deposition did not occur until seven months after the accident. We find no error in the WCJ's decision to impose penalties and attorney fees in this case.

**Decree**

For the above reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to defendant-appellant, Iberia Sugar Co-operative, Inc..

**AFFIRMED.**